Cook, Appellant, *v.* Bensalem Township Zoning Board of Adjustment.

176

Argued November 13, 1963. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*David Freeman,* with him *Pearce H. E. Aul,* for appellant.

*John H. Wood, Jr.,* for appellee.

OPINION BY MR. JUSTICE MUSMANNO, January 8, 1964:

For over a quarter of a century the appellant in this case, Clarence Cook, was engaged in the general hauling business, transporting from one place to another dirt, cinders, top soil, quarry spoils, cement blocks, lumber, peat moss, steel tubing and various and sundry other materials in bulk, utilizing in this commer-

cial enterprise dump trucks, pick-up trucks, vans, tractors and trailers.

He originally operated from a location in Philadelphia and then removed to Bensalem Township, his base of operations being 675 Center Avenue. In October, 1952, he purchased in the same township, a two-acre tract of land, located at 2876 Street Road, and here his legal troubles began.

In the spring of 1954 he began to construct on this tract a dwelling house. In order to level off the terrain which was marshy, low and irregular, he used several of his trucks to haul cinders, dirt and other fill. While the ground was being levelled and the house was taking shape and form, the township enacted an ordinance (effective December 16, 1954), which zoned the area R-1 Residence. In June 1955, Cook's new house was completed, the grounds were regularized, and the Cook family moved in. With them moved also the paraphernalia, equipment and vehicles which had been Cook's business modus operandi for some twenty-five years.

On February 27, 1957, the zoning officer of Bensalem Township notified Cook that he was violating the zoning ordinance of 1954 in that he was "engaging in a business in a R-I Residence district," and he was "ordered to stop, cease and desist" storing and parking his industrial vehicles on the premises. Cook denied that he was violating the ordinance and appealed to the zoning board of adjustment which sustained the cease and desist order. Cook then appealed to the Court of Common Pleas of Bucks County, which sustained the action of the zoning board and finally he appealed to this Court.

A reading of the record would suggest the possibility that Cook is endeavoring to force physical circumstances into the mold of a desire close to his heart. He argued in the court below that the equipment on his

property falls into the "accessory use" permitted by section 301 of the zoning ordinance, which, inter alia, provides: "A building may be erected or used, and a lot may be used or occupied, for any of the following purposes and no other:

"1. Single family detached dwelling.

. . .

"10. Accessory use on the same lot with and customarily incidental to any of the foregoing permitted uses. The term 'accessory use' shall not include a business, but shall include: a. Private garage or stable . . ."

At the time of the promulgation of the cease and desist order, Cook's property swarmed with a dump truck, a pick-up truck, two tractors, two trailers, a van truck body for storage of oils and tools, and a partially dismantled truck for storing repair parts. The court below very properly held that such a vehicular accumulation "would be beyond the scope of activities which by any stretch of the imagination could reasonably be considered 'accessory' or 'customarily incidental' to a dwelling house."

Only a poet astride a steed of resistless conjuration could visualize such a fleet of dump trucks and tractors as part of a domiciliary retreat, fitting into the picture of residential serenity unvexed by the noisy wheels of commercial enterprise.

Cook argued also that he was entitled to store and use his equipment in his business because he had adapted his property to such business use prior to the enactment of the 1954 ordinance. Thus, he maintained that he was entitled to the benefit of section 1100 of the zoning ordinance which specified, inter alia: "Any lawful use of a building or land existing at the effective date of this Ordinance may be continued although such use does not conform to the provisions of this Ordinance."

In support of this contention he testified that as early as the spring of 1953, or a year and a half prior to the enactment of the ordinance, he had transferred the base of operations for his vehicles to the 2876 Street Road location and that continuously thereafter his trucks set out from this point and always returned to this point. The evidence he presented to bolster this contention was not accepted by the court below as credible. Several witnesses spoke of seeing trucks which, like phantoms, moved about in the accomplishment of their vague and ambiguous missions. They did not remember dates and they contradicted themselves on the crucial periods involved. One witness retracted his testimony which had been that Cook had used the property for conducting truck repairs.

The lower court found a "lack of probabilities" in the situation described by Cook, and, after a discussion of the evidence, concluded that it did not believe "the testimony of appellant's witnesses that the headquarters of his trucking business were established on the premises prior to the enactment of the zoning regulations."

We do not find that the court abused its discretion in reaching the indicated conclusion.

The appellant also argued in the court below that it was his specific intention, before the effective date of the ordinance, to convert his premises on the Street Road into a truck terminal. Advanced as may be the science of interpretation of psychic phenomena, the courts cannot be expected, nor are they equipped, to look into a person's mind to ascertain his thoughts and intentions. Only physical evidence manifested in the most tangible and palpable form can bring about the application of nonconforming clauses in a zoning ordinance. Before a supposed nonconforming use may be protected, it must exist somewhere outside the property owner's mind. This court said in *Haller Baking*

*Company's Appeal,* 295 Pa. 257, that while the phrase "existing use" may be difficult to define, it is not difficult of determination: "As understood in the ordinance; 'existing use' should mean the utilization of the premises so that they may be known in the neighborhood as being employed for a given purpose, i.e., the conduct of a business. Ordinarily an existing use for business combines two factors: (a) construction or adaptability of a building or room for the purpose, and (b) employment of the building or room or land within the purpose."

The court below concluded that the standards so set up were not met by the appellant, and we are satisfied that its conclusions are supported by the record.

Following the entering of the court's decree nisi, Cook petitioned to have his case remanded for the taking of further testimony which would show his pre-ordinance intention to employ his premises for the storing and servicing of trucks and would show also the expense he incurred in preparing his property for business purposes prior to the ordinance date.

The Court denied the petition, stating: "The 'new' evidence would be no more enlightening than was that already in the record for the purpose of establishing the nonconforming nature of appellant's activities on the premises prior to the ordinance. The extent and cost of the filling operation would not be of any definite and objective indicia of the commitment of the premises to the commercial venture, for the reasons mentioned by the hearing Judge in his opinion; the additional evidence would be just as inconclusive on this score."

We see no error in the court's disposition of the case throughout and its final order is affirmed.