834 A.2d 535

**James T. SMALLEY, Appellant**

**v.**

**ZONING HEARING BOARD OF MIDDLETOWN TOWNSHIP, Appellee.**

**Dale and Connie Cummings, Intervenors.**

Supreme Court of Pennsylvania.

Submitted May 16, 2002.

Decided Oct. 23, 2003.

86

Charles O. Marte, Langhorne, for James T. Smalley, appellant.

Jennifer L. McGrath, Francis X. Dillon, Langhorne, for Zoning Hearing Bd. of Middletown Tp., appellee.

Stanton C. Kelton, Langhorne, for Dale and Connie Cummings, Intervenors.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

### OPINION OF THE COURT

Justice CASTILLE.

In this zoning appeal, we consider questions arising from a local zoning board's determination that a long-standing home accounting office did not qualify as a valid nonconforming use in a residential zoning district because the homeowner did not memorialize the professional use by securing a use and occupancy permit, a requirement not previously existing. Because we find that the tribunals below erred in depriving appellant of a valid nonconforming use based upon an unsubstantiated, technical requirement, we reverse and remand the matter for issuance of a certificate of nonconforming use.

Appellant owns a property in Levittown, Middletown Township, Bucks County, Pennsylvania, in a district zoned R–2, residential. The property measures 7,320 square feet (slightly more than a sixth of an acre) and contains a single family residence. Appellant has operated a tax accounting practice out of his home since 1982. To accommodate the practice, appellant converted his dining room, which measures thirteen (13) by ten (10) feet, into an office. In 1990, appellant converted an upstairs bedroom, measuring nine (9) by thirteen (13) feet into a computer room to support the practice. In 1991, Middletown Township amended its Zoning Ordinance. Ord. 91–16, 3/26/91. In the parts relevant here, the amended Ordinance: (1) established a requirement of "a minimum lot area of one (1) acre" to conduct a "professional office" at a residential location, Ord. § 2307B(1)(b)(ii); and (2) established a requirement that "a professional office shall provide one (1) off-street parking space for each employee, plus one (1) additional space for each two hundred (200) square feet of office space." Ord. § 2307B(1)(b)(iv). Appellant's existing home-based business was in violation of both the minimum lot area and parking space requirements of the amended Ordinance.

On September 14, 1999, in response to a notice of a zoning violation arising from his use of his residence as a professional office, appellant filed an application with appellee, Middletown Township Zoning Hearing Board ("ZHB" or "Board"), for a special exception under section 2307B and/or for variances to permit the continued operation of the accounting office as an accessory home occupation. Appellant later retained counsel and amended his application, withdrawing his request for a special exception and variances and requesting instead a certificate of nonconforming use based upon the fact that his home-based accounting practice predated the 1991 amendments to the Ordinance and was in conformity with the provisions of the prior Ordinance. On October 13, 1999, the ZHB held a hearing at which appellant, his two employees, three of his clients, and several of his neighbors testified. The matter was then continued by the ZHB to secure a legal opinion as to whether appellant had satisfied his burden. In the meantime, appellant offered to attempt to find a means to alleviate the parking and traffic congestion problems which had arisen in the past few years and had been the subject of complaints from his neighbors. At the next hearing on December 15, 1999, appellant presented evidence concerning his efforts to ease the congestion, including the fact that he was opening a second office in Philadelphia in order to divert a sizable portion of his clients from his home office and had arranged with a neighbor to lease parking space from her. The ZHB also heard additional testimony from neighbors who remained opposed to appellant's request for a certificate of nonconforming use. At the conclusion of the second hearing, one of the ZHB members moved to grant the certificate of nonconforming use, but that motion failed by a 3–2 vote. N.T. 12/15/99, 38–42.

On January 12, 2000, the ZHB issued its formal decision explaining its denial of the requested certificate. In relevant part, the ZHB reasoned that, although it found that appellant used his home as an accounting office since prior to the 1991 amendments to the Ordinance, that use was "not a lawful use of the property" for purposes of establishing a valid noncon-

forming use because "[a]t no time did [appellant] apply for or receive a use and occupancy permit for the use of the property as an accounting office whether as a home occupation or otherwise." Findings of Fact, ¶¶ 9–10. The ZHB cited to no provision in the previous Ordinance, nor any other source, which required a homeowner to secure such a permit for a home office to be deemed lawful. The ZHB also noted that, in 1997, appellant had applied for and secured a variance to permit an addition to his kitchen, without disclosing that other portions of the residence were used to conduct his accounting practice. *Id.* at ¶¶ 11–13. Apparently, the ZHB viewed appellant's failure to mention the office in the 1997 variance application as evidence that his home accounting office was not a lawful use of his property under the township zoning restrictions in existence before the 1991 amendments.[1]

Appellant appealed to the Court of Common Pleas of Bucks County, which heard no additional evidence.[2] In affirming the ZHB, the trial court noted that, under Section 2801 of the current Middletown Township Zoning Ordinance, a right of nonconforming use can be established only by a use which was lawfully in existence prior to the adoption of the new Ordinance. The court agreed with the ZHB that, because appellant had never obtained a use and occupancy permit reflecting the home occupation under the prior Ordinance, he could not establish a valid nonconforming use. According to the trial court, the absence of a permit rendered appellant's long-term use of the property as a professional office unlawful. The trial court further held that the decision of the ZHB was correct for the independent reason that appellant's operation of a professional office from his residence was now having an adverse impact on the neighborhood in the form of parking

1. The ZHB's conclusions of law inexplicably fail to mention the denial of the certificate of nonconforming use; instead, they address the requests for variance and special exception which appellant had withdrawn. The Order accompanying the ZHB's decision likewise addressed the withdrawn requests and not the certificate of nonconforming use.

2. Appellant's neighbors, Dale and Connie Cummings, filed a Petition to Intervene, which the trial court granted. The Cummings have filed a brief in this Court, urging affirmance.

and traffic problems due to recent growth in appellant's business. In the trial court's view, that fact supported the ZHB's finding that appellant's business "posed a detriment to the neighborhood" which could not be justified under the "natural expansion" doctrine.

Appellant appealed to the Commonwealth Court, which affirmed in a memorandum opinion that merely relied upon the trial court opinion. This Court granted further review because of the importance of the property right involved and the apparent hypertechnical basis for the decision below. In reviewing the decision of a zoning hearing board where the trial court has not taken any additional evidence, as occurred here, our review, like that of the courts below, is limited to determining whether the board abused its discretion or committed a legal error. *C & M Developers, Inc. v. Bedminster Township Zoning Hearing Bd.*, 820 A.2d 143, 150 (Pa.2002) (citing *Crown Communications v. Zoning Hearing Bd. of Glenfield*, 550 Pa. 266, 705 A.2d 427, 430 (1997)).

> An abuse of discretion will be found only where the zoning board's findings are not supported by substantial evidence. By substantial evidence we mean such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Valley View Civic Assn. v. Zoning Bd. of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983) (citations omitted).

*Hertzberg v. Zoning Bd. of Adjustment*, 554 Pa. 249, 721 A.2d 43, 46 (1998) (additional citation omitted).

The burden of proving the existence and extent of a nonconforming use is upon the property owner. *E.g. Jones v. Township of North Huntingdon Zoning Hearing Bd.*, 78 Pa.Cmwlth. 505, 467 A.2d 1206, 1207 (1983) (collecting cases). "In order to establish a prior nonconforming use, the landowner is required to provide objective evidence that the subject land was devoted to such use at the time the zoning ordinance was enacted." *R.K. Kibblehouse Quarries v. Marlborough Township Zoning Hearing Bd.*, 157 Pa.Cmwlth. 630, 630 A.2d 937, 941 (1993), *alloc. denied*, 540 Pa. 609, 655 A.2d 996 (1994).

The importance of objective evidence in this area of law was captured by Justice Musmanno, in his inimitable way:

Advanced as may be the science of interpretation of psychic phenomena, the courts cannot be expected, nor are they equipped, to look into a person's mind to ascertain his thoughts and intentions. Only physical evidence manifested in the most tangible and palpable form can bring about the application of nonconforming clauses in a zoning ordinance. Before a supposed nonconforming use may be protected, it must exist somewhere outside the property owner's mind.

*Cook v. Bensalem Township Zoning Bd. of Adjustment*, 413 Pa. 175, 196 A.2d 327, 329–30 (1963).

This Court, in an opinion by Mr. Justice Lamb, recently addressed "the nature of the protections afforded to preexisting nonconforming uses and structures; entirely lawful when constructed or initiated but violative of later-enacted zoning regulations." *Nettleton v. Zoning Bd. of Adjustment*, 828 A.2d 1033, 1036 (Pa.2003) (discussing *Yocum Zoning Case*, 393 Pa. 148, 141 A.2d 601 (1958)).

The protections afforded to such uses are, in this Commonwealth, of constitutional dimension. *Hanna v. Board of Adjustment*, 408 Pa. 306, 183 A.2d 539, 543 (1962), held that the continuance of nonconforming uses is countenanced because the refusal so to do would be of doubtful constitutionality. This Court has said that the protection evolved as a conceived element of due process. *Molnar v. George B. Henne Co., Inc.*, 377 Pa. 571, 105 A.2d 325, 329–30 (1954). More recently, the fundamental basis for the protection of uses and structures lawful when instituted, was identified as the inherent and indefeasible right of the citizens of this Commonwealth to possess and protect property guaranteed by Pa. Const. art. I, 1; *PA Northwestern Distributors, Inc. v. Zoning Hearing Board of Moon Township*, 526 Pa. 186, 584 A.2d 1372, 1375 (1991). The continuance of nonconforming uses and structures is permitted notwithstanding the obstruction thereby of a public purpose in order to preserve the validity of zoning regulations which otherwise would be vulnerable to attack as working an uncompensated

deprivation of these property interests. *Bachman v. Zoning Hearing Board,* 508 Pa. 180, 494 A.2d 1102, 1106 (1985). 828 A.2d at 1036–37.

■ Appellant takes issue with both grounds of the decision articulated by the Court of Common Pleas and adopted by the Commonwealth Court. Appellant first argues that the use of a portion of his residence as a professional office was permitted under the prior version of Ordinance, that his property was devoted to this permitted use at the time the 1991 amendments to the Ordinance were adopted and, therefore, he has established a valid, prior nonconforming use. Part 28 of the amended Ordinance covers nonconformities and defines nonconforming use as follows:

a use, whether of land or of structure, which does not comply with the applicable use provisions of this Chapter or amendment heretofore or hereafter enacted, where such use was lawfully in existence prior to the enactment of such ordinance or amendment, or prior to the application of such ordinance or amendment to its location by reason of annexation.

It is undisputed that appellant's use of his residentially zoned property for a professional office would be improper under the 1991 amendments because it does not comply with sections 2307B(1)(b)(ii) (size of lot) and 2307B(1)(b)(iv) (off-street parking requirement) of the Ordinance. The point of contention is whether appellant's long-term, nonconforming use of the residence as an office was "lawful" under the zoning restrictions in existence prior to the 1991 amendments.

Appellant notes that, before the 1991 amendments, an accessory home occupation was permitted in an R–2 residential district, without any restriction as to lot size or off-street parking. The earlier version of the Ordinance provided in pertinent part as follows:

802. USE REGULATIONS. A building may be erected or used, and a lot may be occupied for any of the following purposes and no other:

A. Single family detached dwellings.

\* \* \* \* \* \*

F. Accessory office of a lawyer, clergyman, teacher or other profession of like character but not including an accessory office of a doctor of medicine, doctor of osteopathy, doctor of dentistry, practitioner of chiropractic or other profession of like character, which are specifically prohibited, and providing further that the aforesaid permitted uses shall be conducted in accordance with the provisions of Article 3, Section 302, Paragraph K....

Paragraph K of Section 302 further provided that (1) such permitted accessory offices could not exceed fifty percent (50%) of the ground area covered by the practitioner's dwelling; (2) not more than three employees, assistants or associates, in addition to the practitioner, may be employed on the premises; and (3) the professional use "shall not, in any way, alter the residential character of the neighborhood, nor in any way adversely affect the safe and comfortable enjoyment of the individual property rights of the neighborhood...." Paragraph L elaborated upon the latter requirement by providing that the accessory office "shall not create activity which is hazardous, a nuisance or annoyance by reason of noise, dust, odor, illumination, vibration, electrical disturbance, appearance or cause parking or traffic difficulties."

Appellant further notes that he produced testimony from himself, his employees and his clients, testimony which the ZHB accepted, which proved that he was operating his home accounting practice prior to 1991, that far less than 50% of the ground area was devoted to the practice, and that only two employees worked on the premises.[3] In addition, appellant notes that, although some of his neighbors testified in 1999 to then-recent parking and traffic difficulties arising from his accounting practice, there was no evidence or suggestion that any such difficulties or adverse effects existed in 1991, when

3. The parties and lower tribunals apparently are in agreement that a home accounting practice is of a "like character" to the office of a lawyer, clergyman or teacher so as to qualify for accessory office status under the old Ordinance.

the current Ordinance was adopted, and which, of course, is the measuring point for the existence of the prior nonconforming use. Brief for Appellant, 7–13.

With respect to the ZHB finding that his use was not lawful because he did not obtain a use and occupancy permit memorializing the accessory office before 1991, appellant argues that the prior Ordinance imposed no such requirement. Appellant notes that, under that prior Ordinance, his was a permitted use in this district and he proved that he satisfied the requirements for such use. Furthermore, appellant argues that, as a matter of Pennsylvania law, once such objective evidence is proffered to establish a prior nonconforming use, it is immaterial whether that use was registered, and a mere failure to register the use cannot abrogate or invalidate it. Thus, appellant argues, the ZHB's denial of his request for a certificate of nonconforming use on this ground was both an abuse of discretion and an error of law. *Id.* at 13–14.

As for the negative inference the ZHB drew from his failure to mention the home office in his 1997 request for a variance to expand his kitchen, appellant argues, among other points, that reliance upon that fact cannot support a retroactive conclusion that a valid nonconforming use did not exist six years earlier. Appellant notes that any nonconforming use would have attached on March 26, 1991, the date the current Ordinance was enacted, and his "alleged failure to disclose" the existence of his home office when seeking a variance to expand his kitchen six years later "cannot serve to abolish the vested property right which attached in 1991." *Id.* at 13.

Appellee Township responds that, "[w]hile [appellant] may be able to establish that he operated an accounting practice out of his residence prior to 1991, he cannot establish that what he operated was a legal, nonconforming use, entitled to protection under the law." In appellee's view, appellant's home office was not a lawful use of the property because he never obtained a use and occupancy permit from the township approving such usage. As support for its argument, appellee cites to the unsworn statement of the township zoning officer at the hearing below that the township had no record that

appellant had ever made a "change in use application" to memorialize his home accounting office. Appellee does not suggest that appellant's use of the home office prior to 1991 was otherwise in violation of the provisions then governing a professional accessory office: *i.e.,* the home office did not exceed fifty percent of the ground area, appellant did not have more than three employees/assistants, nor did the use at that time alter the residential character of the neighborhood, or create a hazard, nuisance, or other adverse effect.

The question squarely joined becomes: Did the Board abuse its discretion or commit an error of law in holding that appellant's use of his home to conduct an accounting practice in 1991 was "unlawful" because he neither sought nor secured from the township a use and occupancy permit reflecting that use? The question of whether a technical failure to register an ongoing, nonconforming use is alone a proper basis to conclude that the use was unlawful might be a difficult issue if it was before us. But, we need not reach that question here because there is simply no support in this record for the ZHB's conclusion that such a registration of use was required under the zoning scheme in effect in this township before the 1991 amendments. Just as a "nonconforming use must exist somewhere outside the property owner's mind" before it may be protected, *Cook, supra,* the technical registration requirement that a zoning authority would invoke to deem a nonconforming prior use unlawful must exist somewhere outside the authority's collective mind.

The amended Ordinance's definition of "nonconforming use," which adverts to a "use lawfully in existence," does not otherwise define what would amount to such a lawful use; certainly, it does not state that explicit approval and recognition by the local zoning authority was required. Presumably, appellant's use of his residence as a home office prior to the amendments was lawful so long as it was in conformity with the township zoning restrictions as they then existed. In arguing that appellant's use must be deemed unlawful because he did not secure a use and occupancy permit, appellee does not cite to any actual provision in the prior Ordinance estab-

lishing that requirement. Nor did the lower courts or the ZHB cite any provision of the previous Ordinance, or any other source in law, imposing such a requirement.

The only provisions of the prior Ordinance introduced below, or argued by the parties here, are Sections 801–803, which governed R–2 residence districts; Section 302, Paragraph K (which is cross-referenced in Section 802F, the section defining "accessory office"); and Section 302, Paragraph L, which is cross-referenced in Section 302K (setting forth restrictions on accessory offices). Nowhere in these sections is there any requirement or suggestion that an accessory office may be lawfully operated only if the township condones the business with a use and occupancy permit recognizing it. Nor was there any evidence introduced below, or argument advanced here, to demonstrate if any other provision of the prior Ordinance required issuance of a permit before such an accessory office use could be deemed "lawful." This Court will not decide the case upon a fiction. We cannot simply assume that the use and occupancy permit requirement invoked by the Board existed in the township. And, if the requirement existed, it is something that should be simple for the ZHB or appellee to document for us—particularly where the ZHB and appellee suggest that the "requirement" is controlling.

The trial court responded to appellant's accurate argument that the ZHB had cited no authority for its legal conclusion that he was required to secure a permit by suggesting that the burden was upon appellant to prove "that he was exempt from such a requirement." Slip op. at 6. But, this analysis wrongly assumed that the "requirement" existed in the first place. Appellant had no burden to prove he was "exempt" from a non-existent or unknowable requirement.[4] Moreover, appel-

4. In affirming the ZHB, the trial court relied primarily upon *Pushnik v. Hempfield Township*, 43 Pa.Cmwlth. 332, 402 A.2d 318 (1979), which it cited for the proposition that "the failure to procure or renew a license to establish or maintain the use may render such use unlawful." Slip op. at 5. In *Pushnik*, the owners had used the property in question as a licensed junkyard until 1966, but then operated it as a septic tank storage facility. In 1970, the township adopted an ordinance that

lant cannot fairly be assigned the absurd task of "disproving" the existence of the use and occupancy permit "requirement" the ZHB and appellee have claimed exists, but which they have been unable to document. Appellant satisfied his burden of proving the existence of his prior nonconforming use by citing to the provisions in the prior Ordinance authorizing accessory offices and producing evidence showing that his office, as operated at the time the Ordinance was amended, qualified.[5] There is simply no support in this record for the ZHB's finding that appellant's failure to secure a use and occupancy permit requirement before 1991 rendered his nonconforming use of his property "unlawful."

What this Court said over thirty years ago, in the context of the doctrine of natural expansion, is no less true and applicable to the question presented today:

> We are well aware that zoning authorities look upon nonconforming uses as the bane of their existence, and we can appreciate their efforts to keep non-conforming uses within bounds. Nevertheless, these authorities cannot arbitrarily abrogate a landowner's vested right of natural expansion by prohibiting all such growth.

*Silver v. Zoning Bd. of Adjustment*, 435 Pa. 99, 255 A.2d 506, 508 (1969). Just as aptly, zoning authorities cannot arbitrarily refuse to recognize the existence of a valid nonconforming use by invoking non-existent, technical restrictions. Accordingly, we find that appellant established a valid nonconforming use

would not have permitted operation of a junkyard in that district. In 1976, the owners sought another junkyard license, which was denied on zoning grounds, and then argued that they were entitled to the license as a nonconforming use. The court rejected that argument because the property had not been licensed as a junkyard since 1966; therefore, when the 1970 ordinance was passed, it was not a legal nonconforming use. Here, unlike in *Pushnik*, there is no evidence that appellant was required to procure a permit (*e.g.*, license) under the prior Ordinance, and his prior use of the residence as a home office was continuous and active at the time the Ordinance was amended.

5. We agree with appellant that his failure to acknowledge the existence of the home office when applying for a variance to enlarge his kitchen in 1997, if relevant at all, cannot operate retroactively to nullify the nonconforming use that he proved existed, and vested, at the time the Ordinance was amended in 1991.

in this case and the ZHB's conclusion otherwise, which is supported by no evidence, cannot stand.

We turn now to the trial court's alternative reason for upholding the Board's denial of the request for a certificate of nonconforming use. The trial court suggested that, even if the ZHB had erred in concluding that appellant failed to prove the existence of a lawful nonconforming use, affirmance was required because "the record amply supports the Board's conclusion that the operation of Appellant's current business had an adverse impact on the neighborhood and has caused parking and traffic difficulties." The trial court held that appellant's right to the natural expansion of his business could not justify that impact because it was proving detrimental to the safety and welfare of his neighbors. Slip op. at 7–8.

Appellant argues that, under the doctrine of natural expansion, his nonconforming use cannot be extinguished as a result of his business growth. Appellant suggests that a zoning authority may limit only the enlargement or construction of a building or an increase in the size of the property subject to the nonconforming use. Appellant cogently notes that he was not seeking to expand his use, but rather seeking only to have that use recognized as a valid nonconforming use under the current zoning Ordinance. Finally, appellant claims that the ZHB lacked authority to terminate or limit his vested right to a nonconforming use merely because the use has begun to have a detrimental effect on the neighborhood.

The Board responds that, if this Court finds that appellant's home office was a valid nonconforming use, that use is defined by that which was in place when the Ordinance was amended in 1991. The Board argues that an increase in the intensity of a use can amount to a change in the use. Moreover, although the Board acknowledges the natural expansion doctrine, it notes that the right to expand is cabined by the fact that the expansion cannot be detrimental to the public health, welfare and safety.

In *Nettleton,* we noted that:

the right to expand as required to maintain economic viability or to take advantage of increases in trade, is also constitutionally protected. "[A] nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted." *Humphreys v. Stuart Realty*, 364 Pa. 616, 73 A.2d 407, 409 (1950). *See also Silver v. Zoning Board of Adjustment*, 435 Pa. 99, 255 A.2d 506, 507–08 (1969) (invalidating as unconstitutional a zoning provision which prohibited any increase in the number of dwelling units in an apartment building lawfully nonconforming as to use); *Chartiers Tp. v. William H. Martin, Inc.*, 518 Pa. 181, 542 A.2d 985 (1988) (upholding the protected right of operators of a nonconforming landfill to increase the daily intake of solid waste).

828 A.2d at 1037 n. 3. As the Board notes, the right to natural expansion "is not unlimited." *Silver*, 255 A.2d at 507 (contemplated expansion must not be detrimental to public health, welfare and safety and municipalities may impose "reasonable restrictions" on expansions of nonconforming uses).

We need not determine whether appellant's present use of his home office falls within the scope of the natural expansion doctrine because, contrary to the trial court's assumption, the Board never made any finding, even in the alternative, in this regard. The matter came before the ZHB upon appellant's request for a certificate of nonconforming use and the Board ultimately denied the request by a vote of 3–2, citing exclusively to appellant's failure to secure a use and occupancy permit recognizing the existence of the home office. It is true that the ZHB heard evidence concerning the expansion of appellant's business since 1991 and the alleged detrimental impact of that expansion upon the neighborhood in the form of traffic and parking congestion—as well as evidence of the steps appellant had voluntarily undertaken to attempt to alleviate those problems and to resolve the dispute with his

neighbors, including his opening a business office in Philadelphia. It is also true that the ZHB adverted to the increasing traffic resulting from appellant's home office in its findings. *See* Findings of Fact, ¶ 18. But, the ZHB did not purport to find, even in the alternative, that appellant's business had expanded beyond the bounds permitted under the natural expansion doctrine, much less did it hold that that expansion could act utterly to extinguish the right of nonconforming use which vested in 1991. The trial court clearly erred in asserting its own alternative basis upon which to affirm the denial of appellant's request for a certificate of nonconforming use.

The Board abused its discretion in holding that appellant failed to prove that his home accounting practice was a valid nonconforming use of his property when the zoning Ordinance was amended in 1991. Appellant was entitled to a certificate of nonconforming use. Accordingly, the Order of the Commonwealth Court is reversed and the matter is remanded to the Board to issue the certificate.

Reversed and remanded.

Chief Justice CAPPY files a dissenting opinion in which Justice SAYLOR joins.

CAPPY, Chief Justice dissenting.

I agree that Appellant's home office became a valid and legal nonconforming use in 1991 and that the Zoning Hearing Board ("Board") and the courts below erroneously invoked "non-existent, technical restrictions" to counter such a finding. *See* Majority Opinion at 543. Nevertheless, I cannot agree that the correct disposition of this case is to issue the certificate of nonconforming use. Instead, for the reasons offered below, I would remand the matter to the Board to determine whether Appellant's use of the property during the relevant time period entitled him to a certificate of nonconforming use.

The majority opinion's ultimate disposition of this case—to issue the certificate—is premised on the fact that Appellant, James Smalley, established a lawful prior use of the property. The majority does not reach the question of natural expansion,

since the Board did not make any findings, "even in the alternative, that appellant's business had expanded beyond the bounds permitted under the natural expansion doctrine." Majority Opinion at 544. I do not believe, however, that the Board needed to make such alternative findings, since it concluded that Appellant was not entitled to the certificate of nonconforming use on the basis of his failure to obtain a use and occupancy permit. I agree with the majority that the Board erroneously denied Appellant's request on that basis; but this holding does not answer the question of whether Appellant's use of the property at the time he sought the certificate entitled him to a certificate of nonconforming use.

The law of zoning provides that "the use of property which the ordinance protects, or 'freezes,' is the use which was in existence at the time of the passage of the ordinance or the change of a use district but it offers no protection to a use different from the use in existence when the ordinance was passed." *Hanna v. Board of Adjustment*, 408 Pa. 306, 183 A.2d 539, 543 (1962). This maxim is subject to the doctrine of natural expansion, which gives the property owner the right to expand "as required to maintain economic viability or to take advantage of increases in trade" so long as the expansion is not detrimental to the public welfare, safety and health. *See Nettleton v. Zoning Bd. of Adjustment*, 828 A.2d 1033, 1037, n. 3, 2003 WL 21697431, *2 n. 3 (Pa.2003); *Silver v. Zoning Board of Adjustment*, 435 Pa. 99, 255 A.2d 506, 507 (1969).

The majority's remedy in this case—to issue the certificate—overlooks that Appellant was not requesting the certificate in 1991 when the ordinance first changed, but in 1999. Evidence presented before the Board indicated that the use of the property had changed in the intervening years. Therefore, it would appear that in 1999, when Appellant was actually seeking the certificate, he needed to establish that the use at that time was "frozen," i.e., the same as it was in 1991, or was within the doctrine of natural expansion. The Board made no findings of fact or law regarding the use of the property during that time period, since it denied Appellant's request on

an alternative basis. The Board should address this question so that it will not be deprived of an opportunity to determine whether the expansion of Appellant's use is detrimental to the public welfare, safety and health.[1]   Otherwise, under the majority's approach, Appellant may receive a certificate of nonconforming use to which he is not entitled.

For these reasons, I believe the appropriate disposition of this case is to remand the matter to the Board to determine whether Appellant's use of the property during the relevant period is the same as it was in 1991 or within the doctrine of natural expansion.   Accordingly, I respectfully dissent.

Justice SAYLOR joins this dissenting opinion.

1.   The trial court looked at the question related to natural expansion and concluded that the change to the property was not within the parameters of the doctrine.   As the majority alludes to in its opinion, the trial court's decision to review this issue was erroneous.   *See* Majority Opinion at 544.

"In reviewing the decision of a zoning hearing board where the trial court has not taken any additional evidence, as occurred here, our review, like that of the courts below, is limited to determining whether the board abused its discretion or committed a legal error."   Majority Opinion at 538–39 (citations omitted).   Thus, the trial court's review of the Board's determination was limited by the findings of fact and conclusions of law made by the Board.   Even though Appellant raised the issue before the trial court, the trial court exceeded this limited review when it decided the natural expansion question, since the Board did not make any findings of fact or conclusions of law on this issue.   If the trial court determined that this question was necessary to the resolution of the case, then the proper remedy was a remand to the Board to make findings of fact and conclusions of law regarding that issue.