IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allerand Recovery Holdings, LLC    :
    :
v.    : No. 8 C.D. 2025
    : Submitted: March 3, 2026
The Borough Council of the    :
Borough of Waymart, Wayne    :
County, Pennsylvania and KELG    :
Real Estate, LLC    :
    :
Appeal of: KELG Real Estate, LLC    :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
    HONORABLE ANNE E. COVEY, Judge
    HONORABLE STACY WALLACE, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WALLACE           FILED: June 29, 2026


KELG Real Estate, LLC (KELG) appeals from the December 4, 2024 order of the Court of Common Pleas of Wayne County (Common Pleas), affirming a decision of the Borough Council (Council) of Waymart Borough (Borough) and denying Allerand Recovery Holdings, LLC's (Applicant) appeal of that decision. The Council denied Applicant's conditional use application for a proposed inpatient alcohol and drug rehabilitation and detoxification facility. Upon review, we affirm.

**BACKGROUND**

KELG owns a building at 186 Belmont Turnpike, Waymart (Property), within an industrially zoned area, where Mallard Meadows formerly operated a senior

assisted-living center and nursing home for 19 years.  Reproduced Record (R.R.) at 120a, 512a-13a.  A portion of the Property was recently used as a childcare center.[1] *Id.* at 512a.  KELG entered into a letter of intent with Applicant for the sale of the Property.  *Id.* at 512a, 122a, 199a.  On March 12, 2024, as an equitable owner, Applicant applied for conditional use approval to convert the Property into an inpatient rehabilitation and detoxification facility under Section 125-31 of the Borough Zoning Ordinance (Ordinance), which specifically applies to changes and additions to nonconforming uses and treats them as a conditional use.[2]  *Id.* at 551a-52a.  Applicant intended to offer only inpatient treatments at the proposed facility, which would consist of 70 to 80 beds.  *Id.* at 512a.  Because the Ordinance does not list the Prior Uses, nursing home and childcare center, as permitted or conditional uses, Applicant characterized them as nonconforming uses.  *Id.* at 513a.

On April 30, 2024, the Council conducted a public hearing on Applicant's request for conditional use.  At the outset of the hearing, Borough Solicitor Richard B. Henry (Solicitor) reminded the public of its right to intervene and object in the matter before the Council.  *Id.* at 89a.  In particular, the Solicitor remarked "property owners [were] indispensable parties to lawsuits affecting their property rights."  *Id.* at 90a.  The Council permitted 16 individuals, including Maria Miller (Mrs. Miller), the wife of Councilman Donald Miller (Councilman), to intervene as parties.  *Id.* at 96a, 111a.

Applicant first called to the stand Katie McKendry, Clinical and Executive Director of Little Creek, an entity owned by Applicant.  *Id.* at 124a.  McKendry testified to the various treatment services and programs that Applicant offers at its

---

[1] We refer to the Property's past or recent use as a senior assisted-living center, nursing home, or a childcare center as "Prior Uses."

[2] Section 125-45 sets forth the standards and criteria for granting conditional use approval.

other facilities and the screening process involved for admitting patients. *Id.* at 124a-26a. She testified the proposed use at the Property would involve only co-ed inpatient services, with priority given to Wayne County residents. *Id.* at 127a, 129a.

Patrick Crilley, Applicant's Chief Executive Officer, testified that, of the 70 to 80 beds, between 12 and 16 would be used for detoxification purposes, with the remainder dedicated to inpatient residential rehabilitation. *Id.* at 155a.

Although KELG did not intervene, its principal, Robert Grim (Grim) was present and testified on Applicant's behalf. *Id.* at 119a, 199a. Grim testified about the letter of intent to sell the Property to Applicant and the daycare center operating there. *Id.* at 199a-201a. Following Applicant's presentation of Grim's testimony, the Council recessed and continued the public hearing to May 16, 2024.

Applicant next offered the expert testimony of Mark R. Zimmer, Esquire (Zimmer).[3] *Id.* at 260a. Zimmer testified neither the Prior Uses, nor the proposed rehabilitation and detoxification use are listed in the Ordinance as permitted or conditional uses. *Id.* at 266a. On cross-examination, noting the Borough adopted the current Ordinance in 1988, before the Property was first used as an assisted-living and childcare center, Mrs. Miller asked Zimmer whether the Prior Uses were "*valid* nonconforming uses." *Id.* at 277a-78a (emphasis added). Zimmer remarked "neither of the uses that have been there before met the criteria for the uses in Industrial Zone and, so, they had been nonconforming uses." *Id.* at 278a-79a. When asked "if the businesses were placed there without permitting," he replied:

> Well, if they were placed there *without permitting, then they would have been unlawful uses at the time*. If they continued to be used without having been revoked or sued and having a judgment by a Zoning Hearing Board and eventually the Court of Common Pleas—that didn't happen—then they are just outstanding and, if they are allowed, then

---

[3] Zimmer represents KELG in the present appeal.

3

it's kind of a *nonconforming use by default*, I guess is the best way I could put it.

*Id.* at 279a (emphasis added).

Jeff Zerechak, Director of the Wayne County Drug and Alcohol Commission, testified in support of Applicant's request for conditional use. *Id.* at 291a-94a. He highlighted the need for patients to have access to a rehabilitation facility in Wayne County. *Id.* at 294a, 303a. Zerechak acknowledged the county invited Applicant to establish a rehabilitation facility in the Borough. *Id.* at 305a-06a. Jocelyn Cramer, Wayne County Commissioner, echoed Zerechak's comments on the county's need for an inpatient rehabilitation facility. *Id.* at 335a-36a.

Mrs. Miller, one of many individuals granted party status, testified she resided across the street from the Property, separated by State Route 296. *Id.* at 96a. At the May 16, 2024 public hearing, Applicant's counsel asked her whether she was "related to any members of the . . . Council[.]" *Id.* at 406a. Mrs. Miller answered she was "the wife of Councilman [Donald] Miller."[4] *Id.* At the close of the hearing, the parties agreed to permit the Council until its July 9, 2024 meeting to render a decision. *Id.* at 465a-70a. At that meeting, upon Councilman's motion, the Council voted four to one to deny Applicant's request for conditional use. *Id.* at 563a-64a. The Council issued a written decision on July 24, 2024. In support of its decision, it rendered the following findings of fact:

1). The subject property is owned by KELG.

2). The property is under contract or agreement of sale between KELG and [Applicant].

---

[4] Donald Miller, who also goes by Don, is referred to as John Miller in the transcript. This is typographical error.

4

3). [Applicant] has an equitable interest in the property and the standing to seek the pending [c]onditional [u]se.

4). The property is located in the Industrial Zone as defined in the Ordinance.

5). The intent of the Industrial Zone is to provide sufficient space in appropriate locations to meet future needs for light manufacturing activity.

6). The use proposed by [Applicant] is not compatible with the "use" intent of that district.

7). The Industrial Zone is surrounded by residential zones.

8). The most recent uses at the subject property cannot be identified as valid nonconforming uses.

9). The proposed use is likely to create an injurious impact on adjacent properties.

10). The proposed use is not consistent with the conditional uses parameters of Section 125-45 of the Ordinance.

11). It has not been proven that the proposed use is in harmony with the purpose, goals, objectives and standards of the Waymart Borough Comprehensive Plan.

12). The proposed use at the proposed location shall result in a substantial or undue adverse effect on adjacent properties, the character of the neighborhood, and various other aspects of the surrounding area.

13). The proposed use will impose an undue burden on the improvements, facilities, utilities and services of the Borough.

*Id.* at 33a. Based on these findings, the Council concluded Applicant failed to establish the proposed use was consistent with "the terms, conditions and provisions of the" Ordinance. *Id.* at 34a.

Applicant filed a timely land use appeal with Common Pleas and KELG intervened as the owner of the Property. Through its appeal, Applicant asserted the

Council's decision to deny conditional use was an abuse of discretion. Applicant principally challenged the Council's conclusion that the Prior Uses were not valid nonconforming uses. *Id.* at 4a. Applicant also challenged the Council's decision based on, among other things, Councilman's purported conflict of interest and the resulting violation of its due process rights. *Id.* at 6a.

On November 13, 2024, KELG asserted for the first time that Councilman had an "obvious conflict of interest" because his wife, Mrs. Miller, participated as a party before the Council and they reside across the street from the Property. *Id.* at 639a-43a. As a result, KELG sought the reversal of the Council's decision and a grant of Applicant's conditional use request. *Id.* at 643a.

Without taking additional evidence, Common Pleas affirmed the Council's decision. Common Pleas explained neither Applicant nor KELG sought Councilman's recusal during the conditional use proceedings, despite learning of his wife's participation in this matter. Common Pleas concluded Applicant and KELG waived that issue. *Id.* at 729a. On the merits, Common Pleas concluded the Council did not err in denying Applicant's request for conditional use. Following Common Pleas' denial of its motion for reconsideration, KELG appealed to this Court.[5]

## DISCUSSION

KELG presents three issues for our review:

I. Whether the Lower Court erred and violated KELG's due process rights by either misinterpreting or ignoring the mandates of *Pascal v.*

---

[5] On June 13, 2025, three days after the Council filed its brief, Applicant filed a brief in support of KELG. The Council filed a motion to strike Applicant's brief, asserting it was untimely under Pa.R.A.P. 908. Despite the glaring untimeliness, which we disapprove, we decline to strike Applicant's brief. As the Council recognized, Applicant asserts "the same issues on appeal," "make[s] the same arguments," "reach[es] the same conclusions," and "seek[s] the same relief from this [Court]" as KELG. Motion to Strike, 6/24/25, at ¶ 12.

6

*City of Pittsburgh Zoning Board of Adjustment*, [] 259 A.3d 375 ([Pa.] 2021).

II. Whether the Lower Court erred in finding that KELG waived its due process rights and opportunity to object to a clear conflict of interest before it was even a party to the proceedings.

III. Whether the Lower Court erred in finding [Council] committed no error of law and its decision was supported by substantial evidence.

KELG's Br. at 5.[6]

Generally, in conditional use proceedings where, as here, common pleas court takes no additional evidence, "appellate review in a land use appeal is limited to determining whether the local governing body committed an error of law or an abuse of discretion." *In re Appeal of AMA/Am. Mktg. Ass'n, Inc.*, 142 A.3d 923, 930 n.5 (Pa. Cmwlth. 2016) (citation omitted). Abuse of discretion is found if the local governing body's findings, such as those of the Council, are not supported by substantial evidence. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637, 640 (Pa. 1983). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Where an error of law is claimed, the standard of review is *de novo* and the scope of review is plenary. *Pocono Manor Investors, L.P. v. Pa. Gaming Control Bd.*, 927 A.2d 209, 216 (Pa. 2007) (citation omitted). "In other words, we do not defer to the [Council's] conclusions of law, and we reassess the record with a fresh pair of eyes." *Allegheny Cnty. Dep't of Health v. Wilkerson*, 329 A.3d 111, 117 (Pa. Cmwlth. 2024)

---

[6] KELG also claims the Council has waived its argument that KELG lacks standing to appeal the Council's decision, because the Council raised the argument for the first time on appeal. KELG's Reply Br. at 2-3 (citing Pa.R.A.P. 302(a)). Upon review of the record, we agree. *See Twp. of Bristol v. 1 Enterprises, LLC*, 177 A.3d 1045, 1051 (Pa. Cmwlth. 2018) (noting standing is a non-jurisdictional and waivable issue and "lack of standing, including claims of lack of capacity to sue, must be raised at the earliest opportunity and are waived if not promptly raised."); *accord Liberties Lofts LLC v. Zoning Bd. of Adjustment*, 182 A.3d 513, 523-24 (Pa. Cmwlth. 2018).

7

Moreover, when common pleas court takes no additional evidence, the local governing body, such as the Council, "is the finder of fact, empowered to judge the credibility of witnesses and the weight afforded to their testimony; a court may not substitute its interpretation of the evidence for that of the [council]." *In re Richboro CD Partners, L.P.*, 89 A.3d 742, 754-55 (Pa. Cmwlth. 2014) (citation omitted). Upon review, the Council's interpretation and application of its zoning ordinance is entitled to considerable deference. *Geerling Florist, Inc. v. Bd. of Supervisors of Warrington Twp.*, 226 A.3d 670, 676-77 (Pa. Cmwlth. 2020).

## I.      Recusal

We combine KELG's first two issues. KELG argues not only did Councilman's wife participate in the conditional use proceedings, but Councilman owns and resides in a property across the street from the Property. KELG's Br. at 13, 19. According to KELG, in the interests of fairness and for due process reasons, Councilman needed to recuse himself on account of his alleged conflict of interest. *Id.* at 13-14. KELG claims Common Pleas erred in concluding it waived its right to challenge the Council's decision based on Councilman's apparent conflict of interest. KELG's Br. at 5. In support, KELG points out it was not a party to the conditional use proceeding before the Council, and consequently did not have an opportunity to seek Councilman's recusal during the proceedings. *Id.* at 21. KELG relies on *Pascal* for the proposition it raised the issue of recusal at the earliest opportunity, i.e., when it intervened in the land use appeal. KELG's Br. at 14.

We start with whether KELG timely sought recusal. As this Court has explained:

> A fair trial conducted in a fair tribunal is a basic and fundamental requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. Courts have recognized that the mere

8

potential for bias or the appearance of non-objectivity may be sufficient to constitute a violation of due process. A question of due process reasonably involves an inquiry into the nature of the process actually provided.

*HYK Const. Co., Inc. v. Smithfield Twp.*, 8 A.3d 1009, 1018 (Pa. Cmwlth. 2010) (internal quotation marks and citations omitted); *see also In re Arnold*, 984 A.2d 1, 8 (Pa. Cmwlth. 2009) (noting "[d]ue process requires a local governing body in the performance of its quasi-judicial functions to avoid even the appearance of bias or impropriety."). Nonetheless, it is settled "[a]ny claims of unfairness or bias should be raised first before the hearing tribunal, in this case the [Council], and then ultimately on appeal, otherwise such claims may be deemed waived." *Id.* at 1021 (citation omitted); *see also Lomas v. Kravitz*, 170 A.3d 380, 198-99 (Pa. 2017) (holding recusal must be sought at the earliest possible moment).

*Pascal*, upon which KELG heavily relies, does not deviate from this tenet. There, a member of the Pittsburgh Zoning Board of Adjustment, LaShawn Burton-Faulk (Burton-Faulk), voted to grant requests for variances and special exceptions "brought by an organization on whose board she sat." 259 A.3d at 378, 385. The appellants did not discover Burton-Faulk's alleged conflict of interest until after the zoning board issued its decision and raised the issue "'*at the first possible opportunity*.'" *Id.* at 378, n.3 (citation omitted) (emphasis added). Our Supreme Court affirmed this Court's conclusion that the appellants did not waive that issue, despite raising it for the first time on appeal. *Id.*

Here, we agree with Common Pleas' conclusion that this case is distinguishable from *Pascal* and that Applicant did not seek Councilman's recusal during the conditional use proceedings, despite Mrs. Miller's public disclosure of his apparent conflict of interest. She stated on the record that she lived across the

street from the Property and was married to Councilman. Here, unlike in *Pascal*, Councilman's conflict of interest was disclosed during the proceedings *before* the Council issued its decision. Even though Applicant's counsel elicited this testimony from Mrs. Miller, he did not seek Councilman's recusal.

With respect to KELG, although Grim represented KELG on the first day of the public hearing, he did not intervene on its behalf in the conditional use proceedings before the Council, despite the Solicitor's reminder to do so. KELG argues because it was not a party to the proceedings and was not present when Mrs. Miller disclosed her marital bond with Councilman, it did not have an opportunity to seek Councilman's recusal.[7] KELG's Reply Br. at 4. KELG, however, cites no legal authority, and we have found none, for the proposition that a party that chooses not to participate in a quasi-judicial proceeding, despite notice and opportunity, may later seek the recusal of a councilmember on appeal based on information initially disclosed during that proceeding.

Indeed, adopting KELG's position would invite gamesmanship. Thus, a party with notice of a quasi-judicial proceeding who elects not to intervene assumes the risk of waiving any conflict-of-interest claim. Otherwise, the process would turn on its head, permitting a party that attended public hearings to await an unfavorable outcome before seeking recusal. *See League of Women Voters of Pa. v. Commonwealth*, 179 A.3d 1080, 1086 (Pa. 2018) (noting "[l]itigants cannot be permitted to hedge against the possibility of losing a case on the merits by delaying the production of arguable grounds for disqualification, or, worse, by digging up such grounds only after learning of an adverse order."). KELG's position would also "encourage judge-shopping, would undermine the interests in the finality of

---

[7] Tellingly, KELG does not explain when or how it learned of Councilman's conflict of interest.

10

judicial decisions, and would countenance extensive and unnecessary expenditures of judicial resources, which are avoidable by mere timely advancement of the challenge." *Id.* Accordingly, based on the circumstances of this case, Common Pleas did not err in concluding KELG is not entitled to relief on its due process claim.[8]

## II. Nonconforming use

KELG next argues substantial evidence does not support the Council's finding that Applicant failed to establish the Prior Uses were lawful nonconforming uses under the Ordinance. KELG, therefore, argues the Council erred in concluding that Applicant was not entitled to relief under Sections 125-31 and 125-45 of the Ordinance. KELG's Br. at 23-30. The Council counters Applicant did not establish under Section 125-31 that the Prior Uses were nonconforming, a condition precedent. Council's Br. at 36-37. As a result, the Council argues Section 125-31 did not apply. We agree.

A lawful nonconforming use is a use that predates the enactment of a prohibitory zoning restriction. *Hafner v. Zoning Hearing Bd. of Allen Twp.*, 974 A.2d 1204, 1210 (Pa. Cmwlth. 2009). "The right to maintain this nonconforming use is only available for uses that were lawful when they came into existence and which existed when the ordinance took effect." *Id.* at 1210-11. "Preexisting illegal uses cannot become nonconforming uses." *Id.* at 1211. Moreover, the burden of proving the existence of a nonconforming use lies with the property owner. *Jones v. Twp. of North Huntingdon Zoning Hearing Bd.*, 467 A.2d 1206, 1207 (Pa. Cmwlth. 1983). To establish a prior lawful nonconforming use, the property owner "is required to provide objective evidence that the subject land was devoted to such

---

[8] Given the untimeliness of its recusal request, we need not address the merits of whether Councilman had a conflict of interest resulting in the violation of KELG's due process rights.

use at the time the zoning ordinance was enacted." *Smalley v. Zoning Hearing Bd. of Middletown Twp.*, 834 A.2d 535, 538-39 (Pa. 2003). "A lawful nonconforming use establishes in the property owner a vested property right which cannot be abrogated or destroyed unless it is a nuisance, it is abandoned or it is extinguished by eminent domain." *Keystone Outdoor Advert. v. Dep't of Transp.*, 687 A.2d 47, 51 (Pa. Cmwlth. 1996).

Here, the parties do not dispute the Property is located in an industrial zone, where only "essential services" are permitted uses.[9] The parties likewise do not dispute that Applicant's proposed use of the Property, an inpatient rehabilitation and detoxification facility, is not an essential service. In addition to the sole permitted use, nine conditional uses are contemplated in the industrial zone, none of which apply to Applicant's proposed use of the Property.[10]

As mentioned, Applicant sought relief under Section 125-31 of the Ordinance, which provides in relevant part "[a]ll *changes and additions to nonconforming uses*, excepting those identified above, *shall be considered conditional uses* and permits for alternations, changes in use or additions shall be granted only after a determination by the Borough" that certain conditions, not relevant here, "have been or will be satisfied." ORDINANCE, § 125-31 (emphasis added). Section 125-29 defines a nonconforming use as a

> use *legally existing* on or before February 19, 1979, or a . . . use, planned and under construction in compliance with existing law prior to the effective date of this Chapter or any amendment thereto and completed

---

[9] The Ordinance defines essential services as "[p]ublic utility uses and public or semipublic providers of emergency services such as fire and ambulance uses." ORDINANCE, § 125-05.

[10] They include: (1) research, engineering or testing laboratories; (2) administration offices; (3) assembly from components; (4) pharmaceutical production; (5) optical instruments production; (6) textile manufacturing; (7) enclosed storage facilities; (8) warehouses, distribution centers and terminals; and (9) other light manufacturing uses. ORDINANCE, § 125-13.

12

within one (1) year period after the effective date of this Chapter or amendment thereto and which does not with the use regulations of the district in which located. A . . . use allowed by variance in a district where it is nonconforming with any regulations of this Chapter shall be considered a nonconforming use.

ORDINANCE, § 125-29 (emphasis added); *see* 53 P.S. § 10107 (defining nonconforming use as "a use, whether of land or of structure, which does not comply with the applicable use provisions in a zoning ordinance or amendment heretofore or hereafter enacted, where such use was lawfully in existence prior to the enactment of such ordinance or amendment"). Thus, under the Ordinance, to seek conditional use approval, an applicant must first establish a legally existing nonconforming use,[11] i.e., a lawful use predating its enactment.

Based on the record, we agree substantial evidence supports the Council's finding that Applicant failed to establish the Prior Uses were legal nonconforming uses, i.e., lawful uses predating the Ordinance. The Council found the Ordinance was originally enacted in 1979 with several subsequent amendments. R.R. at 785a. The Ordinance was most recently recodified in August 2023. *Id.* According to the Council, the earliest available version of the Ordinance dates to 1988 and it features a zoning map dated August 2, 1988. *Id.* at 786a.

With respect to the Property, the Council found some structure existed there in 1968, the nature of which is unknown. *Id.* However, the Council found, based on the Wayne County Assessment Records, that "for at least some time in the 1970s and or 1980s, there was a textile manufacturing facility located there but was

_____

[11] KELG baldly suggests when a use is not permitted in an ordinance, the use becomes nonconforming by default. KELG's Br. 25-26. In addition to specifically ignoring the definition of "nonconforming use" in the Ordinance, which requires a preexisting *lawful* use, KELG's position runs counter to the well-established principle that "[p]reexisting *illegal* uses cannot become nonconforming uses." *Hafner*, 974 A.2d at 1211 (emphasis added).

changed to a personal care home on or about October 1998[12] and then to the [childcare] center on or about June 2022." *Id.* The Council determined, although Applicant failed to meet its burden "to provide a history of the Borough zoning regulations or the various uses of the [Property]," the evidence established the Prior Uses were unlawful nonconforming uses. *Id.*

At the earliest, the Prior Uses at the Property were implemented in 1996, several years after the 1988 amendment of the Ordinance, first enacted in 1979. As Applicant's expert Zimmer acknowledged, the Prior Uses were unlawful and in violation of the Ordinance. The Council explained Applicant "never took the time to attempt to establish whether the previous uses of the . . . [P]roperty were ever legally existing uses. No one presented or even suggested the existence of a certificate of nonconformance of past uses at the [P]roperty." *Id.* at 794a. Accordingly, substantial evidence supported the Council's finding that the Prior Uses were not lawful nonconforming uses.[13] We, therefore, cannot conclude the Council erred in determining Applicant was ineligible to seek relief under Section 125-31.[14]

## CONCLUSION

Based on the foregoing, Common Pleas did not err in concluding KELG waived its due process claim. Despite having notice and opportunity, KELG failed

---

[12] In its conditional use application, Applicant claimed the assisted-living center was established in 1996. R.R. at 513a.

[13] Applicant did not argue the Prior Uses were lawful nonconforming uses because of a variance.

[14] In light of our conclusion that Applicant was not entitled to relief under Section 125-31, we need not determine whether Applicant satisfied subsections A through G of Section 125-31, the Ordinance's criteria for conditional use under Section 125-45, or which party bears the burden of proof under Section 124-45. To the extent the Council addressed these issues, it erred. Once it determined Applicant did not satisfy the threshold criteria under 125-31, that is whether the Prior Uses were nonconforming, the Council should have terminated its analysis.

14

to intervene in the conditional use proceedings before the Council. We likewise cannot conclude the Council's finding that Applicant failed to establish the Prior Uses were lawful nonconforming uses was unsupported by substantial evidence. As a result, Applicant was not entitled to seek relief under Section 125-31 of the Ordinance. Accordingly, we affirm Common Pleas' order. We also deny the Council's motion to strike Applicant's brief.

_____
STACY WALLACE, Judge

15

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Allerand Recovery Holdings, LLC :
:
:
v. : No. 8 C.D. 2025
:
The Borough Council of the :
Borough of Waymart, Wayne :
County, Pennsylvania and KELG :
Real Estate, LLC :
:
Appeal of: KELG Real Estate, LLC :

## **O R D E R**

    **AND NOW**, this 29th day of June 2026, the Borough Council of Waymart Borough's "Motion to Strike Brief of Plaintiff/Appellee, Allerand Recovery Holdings, LLC" is hereby **DENIED**. The December 4, 2024 order of the Court of Common Pleas of Wayne County is hereby **AFFIRMED**.

 

_____
STACY WALLACE, Judge