630 A.2d 937

**R.K. KIBBLEHOUSE QUARRIES, Appellant,**

v.

**MARLBOROUGH TOWNSHIP ZONING HEARING BOARD,** James Peirce, Marie Peirce, Dave Kendall, Brooke Kendall, Marlborough Township.

**R.K. KIBBLEHOUSE QUARRIES**

v.

**MARLBOROUGH TOWNSHIP ZONING HEARING BOARD,** James Peirce, Marie Peirce, Dave Kendall, Brooke Kendall, Marlborough Township.

**Appeal of MARLBOROUGH TOWNSHIP, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 17, 1992.

Decided Aug. 17, 1993.

Reargument Denied Oct. 8, 1993.

Sean P. Flynn, for appellant/appellee R.K. Kibblehouse Quarries.

Marc D. Jonas and Philip W. Newcomer, for appellee/appellant Marlborough Tp.

Before McGINLEY, PELLEGRINI and KELLEY, JJ.

KELLEY, Judge.

R.K. Kibblehouse Quarries (Kibblehouse) appeals from the May 1, 1992 order of the Court of Common Pleas of Montgomery County (trial court) which reversed in part and affirmed in part a decision of the Marlborough Township Zoning Hearing Board (board) made upon the application of Kibblehouse.[1]

The subject property is owned by Kibblehouse and consists of approximately 181.3 acres located in Marlborough Township, Montgomery County. The property is bisected by Unami Creek and Crusher Road, which divide the northeast portion (north side) from the southwest portion (south side). From 1916 to the present, the north side of the property has been quarried by its various owners and lessees.

In 1970, Marlborough Township (township) adopted its first zoning ordinance and map. As a consequence, part of the property on the north side was zoned Limited Industrial (LI) where quarrying was a permitted use. The remainder of the north side property was zoned Residential–Agricultural (RA–1) and encircled the LI zone. The south side property fell entirely within the RA–1 district.

In 1990, Kibblehouse requested that the township zoning officer declare the quarry operation on the north side as a valid nonconforming use and permit its expansion over the entire property, including the south side. The zoning officer determined that while nonconforming, under the provisions of the ordinance the use could not be expanded beyond 25% of its 1970 limits.

On or about May 8, 1990, Kibblehouse filed an application with the board appealing the decision of the zoning officer. The application sought recognition of the existing quarry as a

1. Both parties have appealed from the trial court's order. Kibblehouse filed Appeal No. 1135 C.D.1992 while the board filed Appeal No. 1790 C.D.1992. These cross appeals were consolidated *sua sponte* by our court's order of June 9, 1992. By operation of Pennsylvania Rule of Appellate Procedure 2136, Kibblehouse is deemed the appellant and the board is deemed the appellee.

nonconforming use and the issuance of a use permit to allow the expansion of quarrying operations over the entire property.

After eight days of hearings, the board determined that a nonconforming use had not been established because at the time of the adoption of the ordinance in September, 1970, quarrying activities were entirely confined within the LI district, where quarrying is a permitted use. Further, the board determined that, in any event, the ordinance did not permit the expansion of the nonconforming use of land and Kibblehouse had never challenged the validity of the ordinance.

By letter dated June 21, 1991, the board denied Kibblehouse's application. The board issued a detailed opinion on July 15, 1991.

On July 22, 1991, Kibblehouse appealed the board's decision to the trial court arguing that the board's decision was contrary to law, was not supported by substantial evidence and constituted an abuse of discretion. By stipulation, the township was allowed to intervene and had its position represented on March 20, 1992 at argument before an *en banc* panel of the trial court consisting of Judges Lawrence A. Brown and Marjorie C. Lawrence.

On April 8, 1992, the trial court issued an order reversing the board. The trial court held that the Kibblehouse's quarry use was indeed a nonconforming use, and that since the ordinance "contains no restrictions on the extension of the nonconforming use of land", Kibblehouse could use its entire property for a quarry. The trial court further remanded the case to the board for the imposition of reasonable conditions to protect the health, safety and welfare of the community.

The township hand-delivered an application to Judge Lawrence for an interlocutory appeal by permission on April 15, 1992. The township's petition claimed that the remand portion of the trial court's order was improper and would only delay an ultimate resolution of the matter. The petition requested that the trial court delete the remand or certify the entire order as involving a controlling question of law; in

either case, allowing the township to take an immediate appeal.

Judge Lawrence held a conference with all counsel in her chambers on April 16, 1992. At the conclusion of the conference, Judge Lawrence rescinded the entire April 8, 1992 order. On May 1, 1992, a new order was issued by the trial court on the merits of the appeal. The new order again reversed the board's finding that Kibblehouse's quarry was not a nonconforming use, but sustained the board's conclusion that the use could not be further expanded into the south side of the subject property. The trial court determined that the quarry may be expanded throughout the north side. Kibblehouse appeals from this latest order.

On appeal, the following questions are presented for our review: (1) whether a single judge of a trial court sitting *en banc* is authorized to rescind an order entered by the trial court *en banc*; (2) whether quarrying is an established nonconforming use on the north side; and (3) whether the owner of a nonconforming extractive use is entitled to expand the use throughout the landowner's entire property where the municipality's zoning ordinance is silent on the right to expand nonconforming uses of land.

Because no additional evidence was submitted to the trial court in their review of the board's findings, our scope of review is limited to a determination of whether the board committed a manifest abuse of discretion or an error of law. *Searles v. Zoning Hearing Board, City of Easton,* 118 Pa.Commonwealth Ct. 453, 545 A.2d 476 (1988). A zoning hearing board abuses its discretion only if its findings of fact are not supported by substantial evidence. *Bilotta v. Haverford Township Zoning Board of Adjustment,* 440 Pa. 105, 270 A.2d 619 (1970).

## 1. The Validity of the Orders Below.

Initially, Kibblehouse argues that the trial court's May 1, 1992 final order and its April 16, 1992 order rescinding its initial April 8, 1992 order are both nullities because the April 8

order was entered by the trial court *en banc,* while the two subsequent orders were issued by Judge Lawrence alone. We believe this is an erroneous characterization of the record.

■ Our review of the three orders in question indicates that on each occasion Judge Lawrence signed the order on behalf of the trial court *en banc.* Below the signature of Judge Lawrence on each of the orders, the following words are present:

Court En Banc:

Brown, J.

Lawrence, J.

Thus, on their face, each order represents the joint opinion of the court *en banc,* not merely that of the authoring judge.

Moreover, in *Cameron v. Board of Adjustment of Greensburg,* 1 Pa.Commonwealth Ct. 210, 274 A.2d 258 (1971) and *McKay v. North Huntingdon Township Board of Adjustment,* 2 Pa.Commonwealth Ct. 609, 279 A.2d 376 (1971), we considered the role of the trial court sitting *en banc* in zoning matters. We held that the then Municipalities Planning Code[2] permitted the entry of final orders either by a single judge or by the court *en banc.* Notwithstanding the changes promulgated to the provisions relied on by this court, the present Judicial Code, as before, envisions these situations being resolved by adherence to the local rules of court.[3]

We will grant the trial court the necessary deference with respect to its compliance with the local rules of court. Our review of the orders, coupled with our grant of the necessary deference, yield our conclusion that both Judge Brown and Judge Lawrence concurred in the results indicated by the orders. Therefore, all of the orders are valid, leaving the final order of May 1, 1992 subject to further review.[4]

2. Act of July 31, 1968, No. 247, art. X, 53 P.S. § 11009.

3. *See* Section 762 of the Judicial Code, 42 Pa.C.S. § 762; and 53 P.S. §§ 11010, 11011.

4. It should be noted that following oral argument before a panel of this court, Kibblehouse filed a motion for remand to take additional evidence on January 25, 1993. Kibblehouse sought to take additional

## 2. The Existence of a Nonconforming Use on the North Side.

We next consider whether Kibblehouse established a nonconforming quarry use on the north side. In order to establish a prior nonconforming use, the landowner is required to provide objective evidence that the subject land was devoted to such use at the time the zoning ordinance was enacted. *Heyman v. Zoning Hearing Board of Abington Township*, 144 Pa.Commonwealth Ct. 167, 601 A.2d 414 (1991). The burden of proving the extent or existence of a nonconforming use rests with the property owner who would claim the benefit of the rights accorded property with that status. *Id.*

The board concluded that Kibblehouse did not establish a nonconforming use on the north side. The board reasoned that when the ordinance was enacted in 1970, the LI district was specifically delineated to encompass the entire quarrying operation and accommodate its reasonable future expansion throughout that same district.

On appeal to the trial court, Kibblehouse argued that it established the existence of a nonconforming use by showing that a portion of the quarrying activity being conducted on the north side had not been captured within the LI district at the time the ordinance was enacted; therefore, quarrying had also been occurring on land that would be zoned RA–1 by enactment of the ordinance. We agree.

Before the board, Kibblehouse presented the expert testimony of Jeffrey Wert, a civil engineer and land surveyor, and David Farrington, a geologist, for the purpose of proving that the quarrying operation was not entirely confined within the LI district at the time the ordinance was enacted. In opposition, the township relied on the 1970 zoning map which purported to reveal that quarrying was restricted to the LI district alone. However, the 1970 zoning map was flawed in that (a) it did not clearly delineate the zoning district bound-

evidence concerning the procedures followed by Judge Lawrence in rescinding the April 8, 1992 order. By order dated February 22, 1993, we denied the motion based on a conclusion that Kibblehouse had waived its previous opportunities to present any additional evidence.

aries for it lacked a metes and bounds description, and (b) it was based on 1965 aerial photography, clearly inadequate for purposes of defining the extent of quarrying in 1970.

■ In the presence of an indefinite zoning map, where property is situated in close proximity to two zoning districts, the burden of proving in which district the property falls shifts to the municipality. *Jacquelin v. Zoning Hearing Board of Hatboro Borough*, 126 Pa.Commonwealth Ct. 20, 558 A.2d 189 (1989), *allocatur denied*, 525 Pa. 606, 575 A.2d 571 (1990).

In light of the shifted burden of proof, our review of the record reveals that substantial evidence does not exist to support the board's conclusion that a nonconforming use was not established on the north side. The township failed to prove that the quarry was restricted to the LI district when it only relied on its intent and an indefinite zoning map.

■ On the contrary, Kibblehouse was able to establish with expert analysis of aerial photographs and land surveys that a portion of the quarry operation was occurring outside the LI district as established in 1970 and, therefore, a nonconforming use was present at the time the ordinance was enacted.

Accordingly, the trial court correctly found that the board's findings regarding the boundaries of the LI district, along with findings regarding the existence and limited extent of the quarry use are not supported by substantial evidence.

### 3. Expansion of the Nonconforming Use.

Having established the existence of a legal nonconforming quarry use on the north side, we finally consider the merits of Kibblehouse's claim that the nonconforming use may be expanded throughout the entire property, specifically to the south side.

### A. Application of the Zoning Ordinance.

Both parties agree that the ordinance provides guidance for the expansion of a nonconforming building use, but is silent on the expansion of a nonconforming land use. Section 1901 of

the ordinance, which governs nonconforming uses in buildings, provides:

> Any lawful building or the lawful use of any building existing at the time of the passage of this ordinance that does not conform to use, height, location, size or bulk, with the regulations of the District in which it is located, shall be considered a nonconforming building or use, and may continue such use in its present location but shall be subject to all other pertinent regulations concerning nonconforming uses.

In contrast, Section 1900 of the ordinance, concerning nonconforming uses of land, provides:

> Any land, the existing lawful use of which at the time of the passage of this Ordinance, does not conform with the regulations of the District in which it is located, shall have such use considered as nonconforming use, which may continue on such land but shall be subject to all other pertinent regulations covering nonconforming uses.

While specific allowances are made for nonconforming uses of land independent of the nonconforming use of a building, the ordinance restricts only the extension of the nonconforming use of buildings. The nonconforming usage of a building is permitted to extend by 25% of the building's area on the date it became nonconforming. No such restriction is placed on the extension of the nonconforming use of land. Section 1905 of the ordinance provides:

> Extension. Any lawful nonconforming use of a portion of a building may be extended throughout the building, and any lawful nonconforming building or any building of which a lawful nonconforming use is made may be extended upon the lot occupied by such building ... provided that the area of such building shall not be increased by more than a total of twenty-five (25%) percent of the area of such building existing on the date it first became lawful [sic] nonconforming building or a building of which a lawful nonconforming use is made[.]

The board interpreted the absence of a restriction on the expansion of a nonconforming use of land as a complete

prohibition against expansion of the quarry use in the present case. The trial court reversed this conclusion and held that expansion of the quarry at least throughout the north side was authorized by the silence of the ordinance.

A similarly constructed ordinance was analyzed by our Supreme Court in *Philadelphia Art Alliance v. Philadelphia Zoning Board of Adjustment*, 377 Pa. 144, 104 A.2d 492 (1954). In that case, the zoning ordinance permitted the extension of nonconforming buildings and associated uses to 25% of the area of the building at the time the ordinance was adopted.

Like the present matter, the ordinance was silent as to the extension of nonconforming uses not carried on in buildings. The Supreme Court held that this silence could not be construed as a denial of any extension for such nonconforming use, and granted the landowner's request to expand a nonconforming parking lot use. The Supreme Court stated:

> The only reasonable and constitutional construction of the ordinance in question is that it does permit an extension of a nonconforming use of land, even without buildings, *at least,* to the extent of the 25% of the area or tract already devoted to that use.

377 Pa. at 148–49, 104 A.2d at 494 (emphasis in original).

Here, the zoning officer originally ruled in accordance with the principle set forth in *Philadelphia Art Alliance* when he determined that the quarry was a nonconforming use that could be expanded; however, not to exceed 25% of its 1970 limits. In finding that the use was not nonconforming, the board did not address the merits of the expansion argument. The trial court properly reversed the board on that issue and reinstated the determination that the nonconforming quarry use may be expanded on the north side only.

## B. Expansion of the Nonconforming Use to the South Side.

■ This court recognizes that the right to expand a nonconforming use is a constitutional one which may not be

prohibited by a local zoning ordinance. *Gatti v. Zoning Hearing Board of Salisbury Township,* 117 Pa.Commonwealth Ct. 399, 543 A.2d 622 (1988). However, in reversing the board, the trial court remained consistent with the caselaw which accords constitutional protection to a landowner's right to expand a nonconforming use, while simultaneously contenancing restrictions which local zoning ordinances place on the right of expansion. *See Silver v. Zoning Board of Adjustment,* 435 Pa. 99, 255 A.2d 506 (1969) (a zoning provision may not impose an absolute prohibition on a necessary right of expansion although the municipality may enact "reasonable restrictions" on the right of expansion).

Kibblehouse, however, submits that expansion throughout the north side is not adequate, that expansion of the quarry throughout the entire property should be permitted as a matter of right. In support of its argument, Kibblehouse attempts to characterize it quarry as a nonconforming "diminishing asset".

This description, only accepted by a small number of states in the Midwest and West, recognizes the unique nature of quarrying in a consideration of nonconforming uses. Because the land itself is the resource in quarrying, it is consumed in the very process of use. Therefore, the quarrying enterprise is "using" all of the land owned for the extraction purpose, notwithstanding the fact that a particular portion of the property may not be yet under actual excavation. *County of DuPage v. Elmhurst–Chicago Stone Company,* 18 Ill.2d 479, 165 N.E.2d 310 (1960). Kibblehouse argues that the "diminishing asset" theory is actually the appropriate application of Pennsylvania's natural expansion theory to quarry-type operations.

Kibblehouse submits that in accordance with *Cheswick Borough v. Bechman,* 352 Pa. 79, 42 A.2d 60 (1945), the natural expansion of the quarrying operation is permitted as a matter of right. In *Cheswick Borough,* operators of a nonconforming sand, gravel and loam business sought to expand their operations throughout the remainder of their property not previously committed to such use. The Supreme Court affirmed the

trial court's refusal to enjoin the continued excavation of the entire parcel of land, reasoning that it was not essential that the use, as exercised at the time the zoning ordinance was enacted, should have utilized the entire tract. To so hold, the Supreme Court continued, would have the same effect as if the ordinance prohibited all uses of the property. *Cheswick Borough,* 352 Pa. at 82, 42 A.2d at 62.

In Pennsylvania, our courts have recognized that the right to expand a nonconforming use to provide for the natural expansion and accommodation of increased trade "is a constitutional right protected by the due process clause." *Silver v. Zoning Hearing Board of Adjustment,* 435 Pa. 99, 102, 255 A.2d 506–07 (1969); *Gilfillan's Permit,* 291 Pa. 358, 140 A. 136 (1927). However, the natural right of expansion is not unlimited. A municipality has the right to impose reasonable restrictions on the extension of a nonconforming use. *Jenkintown Towing Service v. Zoning Hearing Board of Upper Moreland Township,* 67 Pa.Commonwealth Ct. 183, 446 A.2d 716 (1982).

Our Supreme Court discussed the right of expansion in *Peirce Appeal,* 384 Pa. 100, 105, 119 A.2d 506, 509 (1956):

[A] nonconforming use may be extended in scope, as the business increases in magnitude, over *ground occupied by the owner for the business at the time of the enactment of the zoning ordinance.* As our present Chief Justice pertinently stated in the *Humphreys* case, ... 'a nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; *it may be increased in extent by natural expansion and growth of trade,* neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted.' (Citations omitted; emphasis added.)

Kibblehouse argues that the "diminishing asset" theory should operate to allow expansion of the quarry throughout the entire tract owned at the time the ordinance was enacted. Because the rock on the south side is of excellent quality for

quarrying, the natural growth of the business logically would expand the operation across Crusher Road into the south side. In reliance on *Peirce Appeal*, Kibblehouse necessarily maintains that the south side was always devoted to the future expansion of the quarry. Our review of the record, however, reveals that no such devotion beyond mere intention was ever established.

The land on the south side has never been used in connection with the quarry operation. Instead, the land has been leased to farmers continuously since before the enactment of the ordinance. In fact, the record shows that in 1980 Kibblehouse offered the south side for preferential tax assessment under the Pennsylvania Farmland and Forest Land Assessment Act.

In *Lower Mount Bethel Township v. Stabler Development Co.*, 97 Pa.Commonwealth Ct. 195, 509 A.2d 1332 (1986), *allocatur denied*, 516 Pa. 620, 531 A.2d 1121 (1987), we addressed a similar situation where the owner of a quarry situated on the eastern portion of a tract of land sought to expand the nonconforming operation to the western portion. Like the present case where the north and south sides are separated by Crusher Road and Unami Creek, the parcels of land in *Lower Mount Bethel* were separated by a railroad, a highway, and an industrial facility. The landowner presented evidence that (1) prior to the enactment of the zoning ordinance, work was undertaken on the western parcel to study its feasibility for quarrying, (2) the landowner had announced his intention to the township to quarry the western parcel in the future, and (3) the landowner requested that the western parcel be zoned to permit quarrying. Despite this evidence, more substantial than that offered by Kibblehouse in the present case, we held that the evidence was insufficient proof to allow the extension of the nonconforming quarry from the eastern parcel to the western parcel. *Id.*, 97 Pa.Commonwealth Ct. at 199, 509 A.2d at 1334.

Moreover, in *Overstreet v. Zoning Hearing Board of Schuylkill Township*, 49 Pa.Commonwealth Ct. 397, 412 A.2d 169 (1980), the owner of a nonconforming mobile home park

utilizing half of the owner's property sought permission to install mobile homes on the remaining half of the property owned at the time the ordinance was enacted. After entertaining conflicting evidence, the trial court concluded that the second half of the property had not been devoted to the nonconforming use and refused to grant the permit. We affirmed. *Id.*

As previously stated, our review of the record finds little evidence other than an expression of intent on behalf of Kibblehouse to establish a devotion of the south side to quarrying at the time the ordinance was enacted. Kibblehouse has failed to establish that the south side was ever adequately devoted to the nonconforming use such that expansion would be more reasonable. In full recognition of Kibblehouse's limited constitutional right to expand its quarry, and in accordance with the standard set forth in *Peirce Appeal* and sharpened in *Lower Mount Bethel* and *Overstreet,* we conclude that the board properly denied Kibblehouse's application to expand its quarry operations to the south side.

Accordingly, the order of the trial court is affirmed.

### ORDER

NOW, this 17th day of August, 1993, the order of the Court of Common Pleas of Montgomery County, dated May 1, 1992, at No. 91–14012, is hereby affirmed.