## Brewster v. Highway Materials Inc.

*Emil W. Kantra II,* for appellants.

*Stephen B. Harris,* for appellee Highway Materials Inc

*Frank R. Bartle,* solicitor of Marlborough Township.

ROGERS, *J.,* March 17, 2009—

## I. INTRODUCTION

Appellants, Herbert J. Brewster and Barbara L. Brewster, h/w appealed to the Superior Court of Penn-

sylvania[1] from our order granting appellee, Highway Materials Inc.'s petition for preliminary injunction.[2] The two captioned matters were consolidated for purposes of the hearings and the court's determination. For the

---

1. The matters were transferred by the Superior Court of Pennsylvania to the Commonwealth Court of Pennsylvania by order dated October 14, 2008.

2. *Order Sur: Plaintiff's Petition For Preliminary Injunction*

"And now, May 23, 2008, upon consideration of plaintiff's petition for preliminary injunction. Hearings held regarding same on Friday, May 16, 2008 and Tuesday, May 20, 2008, and this court's review of the relevant and applicable law, it is hereby ordered as follows:

"(1) Plaintiff shall be permitted to blast within 25 feet of defendants' property line;

"(2) Plaintiff shall conduct a pre-blast survey, at its sole cost, of the defendants' home prior to the commencement of blasting adjacent to defendants' home;

"(3) Defendants shall be notified at least 24 hours in advance of any anticipated blasting;

"(4) Plaintiff shall comply with all regulations imposed by the Pennsylvania Department of Environmental Protection and all other regulatory agencies regarding its blasting operations;

"(5) If plaintiff is blasting adjacent to the defendants' property, the defendants, their family or any other third party acting on their behalf, shall remain at a location of at least 300 or more feet from the location where the blast shall occur on plaintiff's property from the time that the explosives on plaintiff's property are wired for detonation until the blast is set off;

"(6) The defendants, their family or any third parties acting on their behalf are hereby enjoined from interfering with any blast at the plaintiff's quarry, or interfering in any other way with plaintiff's lawful mining of its property;

"(7) Plaintiff shall post a bond in the amount of $100,000 to guarantee that it will repair any damage or injury which occurs on the defendants' property as a direct result of the blasting;

"(8) The blasting shall be limited to three times per week with the anticipated time of each blasting to be approximately one hour;

"(9) The blasting, as it relates to the location near defendants' property, shall conclude six months from the date of this order;

following reasons, we believe our order was proper and should be affirmed.

## II. FACTUAL AND PROCEDURAL HISTORY

Highway Materials is a Pennsylvania corporation with its principal place of business at 1750 Walton Road, Blue Bell, Montgomery County, Pennsylvania. Highway Materials owns and operates a quarry located in Marlborough Township, Montgomery County, Pennsylvania known as the Perkiomenville Quarry. The quarry was formerly owned by R. K. Kibblehouse Quarries and consisted of 181.3 acres located in Marlborough Township and bisected by the Unami Creek and Crusher Road.[3] Kibblehouse Quarries is a wholly owned subsidiary of Highway Materials. (N.T. hearing 5/20/08, p. 85.) The portion of the subject property northeast of Unami Creek and Crusher Road is identified as the "north side", and the portion of the subject property southwest of the creek and road is identified as the "south side".[4] The Brewsters reside at 2098 Perkiomenville Road, Green Lane, Montgomery County, Pennsylvania. The Brewsters live immediately adjacent to the Perkiomenville Quarry.

---

"(10) At the conclusion, plaintiff shall forthwith restore the berm to its prior height and condition; and,

"(11) Any modifications to this order shall occur in writing, either by way of a stipulation prepared for the court's consideration for the entry of an order or by separate order of the court.

"By The Court

"Thomas P. Rogers, J."

3. *Appeal of R.K. Kibblehouse Quarries from the Decision of the Marlborough Township Zoning Hearing Board,* 128 Montg. Cty. L.R. 161 (1992), *aff'd,* 157 Pa. Commw. 630, 630 A.2d 937 (1993).

4. *Id.*

Recently, Highway Materials commenced preparation for excavating stone on the north side of the Quarry adjacent to the Brewsters' property. As part of the preparation for excavating, Highway Materials removed the berm and excavated to bedrock. The Brewsters protested these actions to the township stating that Highway Materials should not be permitted to excavate stone closer than 100 feet from the Brewster property line. Highway Materials advised the township that its nonconforming use status permitted it to conduct surface mining on the entire north side of the property. Additionally, in accordance with its Non-Coal Surface Mining Permit (exhibit HM3), and the Non-Coal Surface Mining Regulations found at 25 Pa. Code §77.572(b),[5] Highway Materials was entitled to excavate stone within 25 feet of the side lot line.

---

5. "Pennsylvania Administrative Code; Title 25. Environmental Protection; Part I. Department Of Environmental Protection; Subpart C. Protection Of Natural Resources; Article I. Land Resources; Chapter 77, Non-Coal Mining; Subchapter I. Environmental Protection Performance Standards; Operations

"Current through Supp. 405 (August 2008)

"Section 77.572. Permit line setback.

"(a) Highwalls shall be set back from the boundary of the area covered by a bond under section 77.193 (relating to requirement to file bond). The setback shall be of sufficient width to accomplish the following:

"(1) Prevent possible slumping or failure at or beyond the perimeter of the permit area.

"(2) Allow for the development of final reclamation slopes.

"(b) The minimum setback distance shall be 25 feet (7.62 meters) in consolidated material, in unconsolidated material, the minimum setback distance shall be equal to the height of the exposed unconsolidated material unless otherwise approved by the department.

"(c) The setback shall be shown on the cross sections."

During February and March 2008, the township board of supervisors held a series of meetings to decide the appropriate setback distance for mining and blasting activities at the Perkiomenville Quarry. On April 9, 2008, the board announced its decision at a public meeting that the 100-foot setback described in section 825 of the township zoning ordinances did not apply because the quarry is a lawful nonconforming use. The board found that the setback distance for mining and blasting activities is 25 feet from the property line. (N.T. hearing 5/16/08, p. 51.)

Highway Materials was prepared to move forward immediately with its blasting plan. The Pennsylvania Department of Environmental Protection (DEP) had already approved the plan which Fran Callery, superintendent of Highway Materials, submitted to them. The plan was to mine across the top part of the quarry, 25 feet from the Brewster property.

Callery testified that the final reclamation plan was to backfill the "benches" on a slope in accordance with the approved permit at the completion of the project for safety reasons. (N.T. hearing 5/16/08, p. 44.) Additionally, Callery informed DEP that once the blasting was finished across the northeast and north face, the berm would be rebuilt, seeded, and trees planted. (Exhibit HM 13.)

On April 10, 2008, Highway Materials commenced blasting by using blasters from Maurer and Scott Sales Inc. The blasters loaded explosives into the holes they had drilled previously in preparation for blasting. (N.T. hearing 5/16/08, p. 49.) When the blasters were near completion of the preparation of the shot, Mr. Brewster

appeared on the corner of his property, preventing Highway Materials from setting off the blast. (N.T. hearing 5/16/08, p. 52.) Present at the site were Mr. Callery of Highway Materials; John Melick, a representative from Maurer and Scott; Aimee Bollinger, DEP field representative; and Mike Duke, the District DEP blasting supervisor.

The two representatives of DEP approached Mr. Brewster and explained to him the safety aspects of standing at the location. (N.T. hearing 5/16/08, p. 48.) Mr. Brewster was next asked to step back from the area by John Melick. Mr. Brewster refused. Finally, the local police requested Mr. Brewster to move. Mr. Brewster remained on the property line refusing to move. (N.T. hearing 5/16/08, pp. 49-53.) Mr. Brewster stood at the location videotaping the events. *Id.* Discussion ensued among the blasters, the DEP representatives, and Highway Materials. A determination was made that the blast could be safely ignited despite Mr. Brewster's presence, and the blasters proceeded to set off the blast. (N.T. hearing 5/16/08, p. 50.)

As a result of the events on April 10, 2008, Highway Materials was asked by Michael Menghini, Environmental Group Manager of DEP, to prepare a further blasting plan to mine adjacent to the Brewster property. (N.T. hearing 5/16/08, p. 51.)

On April 14, 2008, Highway Materials commenced a civil action against the Brewsters and petitioned the court for a preliminary injunction against appellants in the Montgomery County Court of Common Pleas. The express purpose of the preliminary injunction was to enjoin appellants from placing themselves in a position of per-

sonal danger by trying to prevent blasting for lawful mining on the Highway Materials property.

On April 18, 2008, four days after Highway Materials filed their complaint and a petition for a preliminary injunction, appellants filed a complaint and a petition for preliminary injunction against Highway Materials Inc., Marlborough Township and Marlborough Township Board of Supervisors in the Montgomery County Court of Common Pleas. Appellants sought to halt all surface mining activities of Highway Materials to within 100 feet of the rear of appellants' property and to terminate all surface mining activities of Highway Materials on the five-acre lot adjacent to appellants' property.

On April 18, 2008, Highway Materials submitted a proposed plan by fax to Michael Menghini to review an "interim blast plan safety measures" resulting from the April 10, 2008 blast. (Exhibit HM 15.) DEP approved the interim blast measures with the following conditions:

"(1) All blasts in the area within 500 feet of the Brewster property were to be designed and conducted in accordance with the plan, specifications and details contained in the April 18, 2008 fax;

"(2) No blasting could be conducted within 150 feet of the Brewster property; and

"(3) The approval and plan was to be considered a 'temporary measure' and DEP reserved the right to rescind and/or modify the approval at its discretion." *Id.*

On April 22, 2008, Highway Materials submitted a letter to DEP as a supplement to its April 18, 2008 letter, which proposed an increase in the blasting distance of

500 feet to 1,000 feet from the Brewster property. (Exhibit HM 16) .

On April 22, 2008, Michael Menghini of DEP informed Highway Materials that no blasting shall be conducted on the surface mining permit until the safety concerns that had arisen could be addressed by DEP. (Exhibit HM 17.)

A meeting was held on April 23, 2008 by members of Highway Materials including Anthony J. DePaul, president of Highway Materials, John Melick of Maurer and Scott, and five members of DEP. The meeting focused on Mr. Brewster and his deliberate exposure to potential blasting hazards. As a result of the meeting, Mr. Lamkie and Mr. Menghini of DEP stated that the "blasting and safety plan" submitted by Highway Materials on April 22, 2008 would be reviewed and approved for resumption of blasting activities in the current active areas of the quarry.

Highway Materials faxed another proposed "blast plan and safety plan" on April 23, 2008 for review by DEP. Michael Menghini of DEP reviewed and approved the proposed "blast plan and safety plan" dated April 24, 2008, with the conditions that:

"(1) All blasts on SMP no. 8073SMI are to be designed and conducted in accordance with the plan, specifications and details in your April 23, 2008 fax;

"(2) No blasting shall be conducted within 1,000 feet of the Brewster property; and

"(3) Highway Materials Inc. must contact and receive prior approval from the department for any proposed angle holes." (Exhibits HM 18, 19.)

Under the blasting plan approved by DEP on May 15, 2008, Highway Materials was restricted from blasting within 1,000 feet of appellants' property. However, Highway Materials' submission for reclamation cross-section, narrative and blasting protocol were acknowledged by DEP correspondence on May 15, 2008 as consistent with their permit and DEP approved the final reclamation plan. (Exhibit HM 20.) Highway Materials was authorized to conduct blasting with the submission in a manner so as not to allow back break onto the adjoining property and consistent with 25 Pa. Code §77.572. However, Highway Materials had to comply with the blasting restrictions detailed in the department's April 24, 2008 letter until the restrictions were removed. *Id.*

On May 16, 2008, the township and the board filed preliminary objections to Brewsters' complaint, which were sustained by the undersigned on May 23, 2008, dismissing both the township and the board as parties to the action. The petitions for preliminary injunction filed by Highway Materials and by the Brewsters were consolidated for purposes of hearings on Friday, May 16, 2008 and Tuesday, May 20, 2008. (N.T. hearing 5/16/08, pp. 7-8.)

At the May 16, 2008 hearing, Fran Callery testified that under the blasting plan approved by DEP on May 15, 2008, it would take approximately four weeks with a total of 10 blasts until the "face is shot." (N.T. hearing 5/16/08, p. 84.) Callery testified that Highway Materials was seeking to have Mr. Brewster out of the area for an hour on approximately 10 occasions until the "face is shot." *Id.* Callery testified that going west along the face,

without restrictions, would take at least eight weeks. *Id.* If DEP put the same restrictions on the blasting, there would be approximately 20 blasts. *Id.* Next would come the south portion going to the east, which Callery estimated approximately 30 blasts and would take about three to four months to complete the area with approximately 40-60 blasts. (N.T. hearing 5/16/08, p. 84.) Callery concluded his testimony by stating that when the Brewster property side is completed, the berm would be immediately restored. *Id.*

On May 20, 2008, Sherman Hayes, vice president and operations manager of Maurer and Scott Sales Inc., Lehigh Valley, Pennsylvania, testified that he has been employed in the explosives industry for approximately 35 years. Hayes testified that he is a certified blaster in the Commonwealth of Pennsylvania. Hayes obtained a Bachelor of Science degree from West Chester University. He is also a certified mine safety and health administration instructor.

Hayes testified that he is familiar with the Perkiomenville Quarry, having been previously employed there for almost 30 years. He identified several blasting protocols that had been submitted to DEP and explained that Maurer and Scott had concerns that arose after Mr. Brewster was standing on the property line. Hayes testified he believed that the most controlled type of blasting applied. (N.T. hearing 5/20/08, p. 14.) He explained that the requirements of the most controlled type of blasting prevents the explosives from going vertical as opposed to horizontal, which provides more confinement. (N.T. hearing 5/20/08, p. 14.)

Hayes testified that in addition to controlling the blast, the blasters used a "mocap" plug. A "mocap" plug is a mechanical device that is put into the hole after the explosives are loaded. Crushed stone is put on top to prevent any ejection of debris. (N.T. hearing 5/20/08, p. 15.) Hayes testified that in addition to the "mocap" plug, it was proposed to cover the blast areas with a high strength geotextile civil engineering fabric, and dirt on top of that. The purpose, he explained, was to absolutely prevent any debris or rock from going anywhere but where the shot is going to go, which is into the quarry. (N.T. hearing 5/20/08, p. 15.)

Hayes testified that this technique has proved successful in situations similar to the instant one. (N.T. hearing 5/20/08, p. 16.) Hayes testified that the distance from appellants' home to the closest point of the face that would be blasted was determined by using a Global Positioning System (GPS) "from the closest wall on the Brewster house to the northeast face which was approximately 547 feet." (N.T. hearing 5/20/08, p. 17.) In the back of the lot on the Brewster property, the center of the short side was close to 350 feet. (N.T. hearing 5/20/08, p. 18.) Hayes testified that the face where blasting would be conducted in each location would be greater than 300 feet from the closest wall of the Brewster dwelling. (N.T. hearing 5/20/08, p. 19.) Hayes testified that the Commonwealth of Pennsylvania permits blasting within 300 feet of a residence. *Id.* Hayes testified that he would prefer to see 300 feet as a safe zone. *Id.* Hayes concurred that given the measurements of the GPS, 300 feet from the site of the active blasting would be greater than 300 feet from the occupied dwelling. (N.T. hearing 5/20/08, p. 19.)

On cross-examination, Hayes was asked how many mishaps he had at the "mine". He responded "none". (N.T. hearing 5/20/08, p. 23.) Hayes agreed that DEP initially took the view that the blast couldn't be closer than 150 feet to the [Brewster] property and then increased it to 500 feet, and then to 1,000 feet. Hayes testified, however, that 300 feet would be a reasonable distance to recommend to DEP and would allow the Brewsters to be around their house during the blasting. *Id.* Finally, Hayes testified that in the busy season, the schedule for blasting is twice a week and in the slower seasons, once a week. (N.T. hearing 5/20/08, p. 26.) In setting up the safety zone, Hayes estimated that the interference with the Brewsters' ability to use all of their property would be between 45 minutes to 60 minutes at the most, generally twice a week. Hayes further testified in estimating the time for blasting, the goal is not to rush the blasters and always go to the extreme in estimating time. In terms of notification to appellants, the quarry can give the Brewsters at least 24 hours notice of when the shot would be set off. (N.T. hearing 5/20/08, p. 27.)

Appellant Hubert Brewster is a neighbor to the quarry and testified that he and his wife have resided at 2098 Perkiomenville Road, Green Lane, Pennsylvania for 22 years. (N.T. hearing 5/20/08, p. 32.) Both husband and wife are retired. (N.T. hearing 5/20/08, p. 34.) He testified that he has three children, four grandchildren, and three great-grandchildren. (N.T. hearing 5/20/08, p. 33.) He also has dogs, cats and horses which he keeps as pets. Mr. Brewster testified that he had a great relationship with the quarry. (N.T. hearing 5/20/08, p. 35.) Mr. Brewster testified that there was an established berm

approximately 12 feet high that had 20-30 years of tree growth on it. (N.T. hearing 5/20/08, p. 37.) Mr. Brewster testified that there has not been any activity by the quarry to the rear of his property for the past 22 years. (N.T. hearing 5/20/08, p. 27.) Mr. Brewster testified that when he presently looks out his bedroom window, he is looking into the quarry instead of the berm and tree line. (N.T. hearing 5/20/08, p. 39.)

Mr. Brewster testified that from the corral to the blast area to the fence is 25 feet. (N.T. hearing 5/20/08, p. 41.) Mr. Brewster testified that he became unhappy with the quarry when they cut the trees and tore the berm down and subjected him to noise and dirt. He testified that his grandchildren and the animals were exposed to the dangers of the blasting. (N.T. hearing 5/20/08, p. 45.) Mr. Brewster testified that in his opinion, they [Highway Materials] are invading the setbacks that the township enacted in 2004. (N.T. hearing 5/20/08, p. 45.) He testified that according to his measurements, to stay back 300 feet would put him in his garage during the blasting.

On cross-examination, Mr. Brewster was asked whether he was told that upon completion of the mining, a landscaped berm would be replaced in the same area. (N.T. hearing 5/20/08, p. 56.) He acknowledged his awareness and responded: "My issue is not the berm for what you're doing with it. My issue is for the safety of my family and my children and grandchildren. If you want to put the berm back when you're ready to close the quarry, that does nothing for me." (N.T. hearing 5/20/08, p. 56.) Hubert Brewster testified only eight pages later that he had only one problem with the quarry and that was the removal of the "berm" which he said

exposed him and his family to "danger, dirt and noise." (N.T. hearing 5/20/08, p. 64.)

There had been an agreement of sale for the quarry to buy appellants' property. Mr. Brewster testified that he believes that the quarry wrongfully terminated the agreement and that he [Brewster] should have been paid a fee as a result of the termination. (N.T. hearing 5/20/08, pp. 54-55.) Mr. Brewster was asked, whether since the termination of the agreement of sale of his property with the quarry, had he been taking steps to make life difficult at the quarry. Brewster said, "I only had one problem with the quarry, and that's when they moved that berm. As I said, until then I looked out for their property, I notified them when there was (sic) vandals there. I did everything I could to help that quarry. I let them come on my property and drill holes. I put a road in for them. I have never attempted to stop them or never complained in 22 years. My complaints started the day they moved that berm and exposed me and my family to the danger and the dirt and the noise." (N.T. hearing 5/20/08, p. 64.) Mr. Brewster further stated, "I have no bitterness toward (sic) the quarry for canceling the agreement of sale; if that's what they want to do, they can do that. That's not my choice. They re-signed with other people after that. That's not my choice." (N.T. hearing 5/20/08, p. 64.)

The undersigned rejects the testimony by Mr. Brewster and finds it to be disingenuous. The trial court finds the motivation for Mr. Brewster's filing of this action, which was filed after Highway Materials filed its petition for preliminary injunction, was to undermine the ability of Highway Materials to conduct its lawful business because

the agreement of sale for purchase of his property by the quarry was terminated.

Alan Breyer testified in behalf of the Brewsters. Mr. Breyer testified that he has been employed by Urwiler and Walter Engineering Inc. as a registered surveyor and engineer since 1973. Mr. Breyer is currently employed as secretary-treasurer for Urwiler and Walter. (N.T. hearing 5/20/08, p. 69.) Mr. Breyer testified that he prepared a two-lot subdivision plan for the quarry in 1996. (Exhibit B-10.) He described the plan as a simple two-lot subdivision that was prepared to review the computations to see if they were accurate and met township requirements prior to sealing it.

Much of the questioning of this witness was intended to overlook the non-conforming use of the north side of the quarry as determined by the Court of Common Pleas of Montgomery County, and affirmed by the Commonwealth Court of Pennsylvania in the decision of *Appeal of R.K. Kibblehouse Quarries from the Decision of the Marlborough Township Zoning Hearing Board,* 128 Montg. Cty. L.R. 161 (1992), *aff'd,* 157 Pa. Commw. 630, 630 A.2d 937 (1993).

Testimony concluded on May 20, 2008. The undersigned entered an order on May 23, 2008 granting Highway Materials' petition for preliminary injunction subject to the provisions as more fully set forth in the May 23, 2008 order.

Appellants erroneously filed their notice of appeal to the Superior Court of Pennsylvania. The matter was subsequently transferred to the Commonwealth Court of Pennsylvania. By order dated June 20, 2008, the undersigned directed appellants to file their concise

statement of errors complained on appeal pursuant to Pa.R.A.P. 1925(b). Appellants' concise statement was timely filed on July 11, 2008 and amended on July 14, 2008.

## III. ISSUES

Appellants set forth four main issues in their concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b) and are as follows:

"(1) The trial court incorrectly determined that Highway Materials Inc. 'shall be permitted to blast within 25 feet of [appellants'] property line' as such holding is contrary to the: (i) prior subdivision and land development plans; (ii) the ordinances of Marlborough Township, including, but not limited to, Zoning Ordinance §602 (relating to nonconformities), Zoning Ordinance §812 (relating to environmental protection) and Zoning Ordinance §825 (relating to surface mining and quarrying) and the Steep Slope Ordinance; (iii) the regulations, permits and authorizations of the Department of Environmental Protection relating to mining activities including but not limited to, the relevant buffers/setbacks relating thereto, and (iv) the laws of the Commonwealth of Pennsylvania relating to the protection of, and expansion of, nonconfirming (sic) uses and (sic) properties and the regulation thereof.

"(2) The trial court erred in granting any and all injunctive (sic) against appellants as Highway Materials failed to establish the relevant burden of proof and that it is entitled to such relief and the necessity of such relief.

"(3) The trial court erred in denying appellant's petition for preliminary injunction as the evidence deduced at the hearing by appellant established the relevant burden entitling them to such relief which is necessary to protect their home from the significant effect of the proposed blasting.

"(4) The trial court erred in not granting appellant's request for costs and attorney's fees."

## IV. DISCUSSION

When reviewing a trial court's decree which grants a preliminary injunction, an appellate court examines the record only to determine if there are any apparently reasonable grounds for the action of the court. *Valley Forge Historical Society v. Washington Memorial Chapel,* 493 Pa. 491, 500, 426 A.2d 1123, 1128 (1981). The appellate court would not inquire further into the merits of the case or pass upon the reasons for or against such action unless it is plain that no such grounds existed or that the rules of law relied upon were palpably wrong or clearly inapplicable. *Chmura v. Deegan,* 398 Pa. Super. 532, 536, 581 A.2d 592, 593 (1990) (quoting *Valley Forge Historical Society v. Washington Memorial Chapel,* 493 Pa. 491, 426 A.2d 1123 (1981)).

Prior to addressing the issues raised in appellants' first contention, the undersigned is compelled to consider the determination by the Marlborough Township Board of Supervisors on April 9, 2008 that Highway Materials. Inc. "shall be permitted to blast within 25 feet of [appellants'] property line." When the township made this determination, it necessarily decided that the 100-foot setback did not apply. This also constituted the author-

ity for Highway Materials to mine within 25 feet of its side lot. At that time, the proper remedy to object to this determination would have been to file an appeal to the zoning hearing board. As that was not done, any contention placing the 25-foot setback at issue now before this court should be deemed waived. Nevertheless, the undersigned will address the issues as follows:

(1) (i). Appellants first contend that the trial court's determination that Highway Materials Inc. "shall be permitted to blast within 25 feet of [appellants'] property line . . . is contrary to the prior subdivision and land development plans." We disagree.

The Commonwealth Court decision in *R.K. Kibblehouse Quarries*[6] *v. Marlborough Township Zoning Hearing Board,* 157 Pa. Commw. 630, 630 A.2d 937 (1993) affirmed a 1992 order of the Montgomery County Court of Common Pleas,[7] which established quarrying as a legal nonconforming use on the north side of the property. At the time that the township's first ordinance was enacted, there were no quarry setback regulations. The only applicable setback in place in 1992 was created by DEP regulation 25 Pa. Code §77.572(b), which permitted quarrying within 25 feet of the side yard. See 25 Pa. Code §77.572(b). Appellants tried to establish that Mr. Breyer's two-lot subdivision plan for the quarry in 1996 bore no indication of nonconforming use and hence established that there was no nonconforming use on that property. This concept was entirely debunked by the Montgomery

_____

6. Kibblehouse Quarries was the predecessor to Highway Materials Inc.

7. *Supra.*

County Court of Common Pleas and Commonwealth Court cases declaring it a nonconforming use.

Appellants contend however, that the quarry subdivision plan (exhibit B-10) prepared in 1996 by Alan C. Breyer, registered surveyor and engineer,[8] was intended to dispute the nonconforming use determined by the Montgomery County Court of Common Pleas and Commonwealth Court cases that declared it a nonconforming use. (N.T. hearing 5/20/08, pp. 71-72.)

On cross-examination of Mr. Breyer, Highway Materials' counsel then inquired if the purpose of the subdivision plan was intended to divide the Kibblehouse property between the south side, which could not be quarried, and the north side which could be quarried, so that the property could be sold to DePaul. (N.T. hearing 5/20/08, p. 77.) Mr. Breyer stated that the purpose of the subdivision was to locate the center of the stream (Unami Creek). *Id.* Highway Materials' counsel then inquired: "The north side of Unami Creek and the south side?" Breyer testified: "Correct." Counsel then asked: "And for no other purpose?" Breyer said: "No". *Id.* Clearly, the Brewsters are trying to read something into the subdivision plan that was not intended. Moreover, the Brewsters have not offered any evidence that the determination of the Commonwealth Court regarding the quarrying of the north side of the quarry has been abrogated.

(1) (ii). Appellants next contend that the undersigned's decision that Highway Materials Inc. "shall be permitted to blast within 25 feet of [appellants'] property line" is

---

8. Alan C. Breyer is now secretary-treasurer for Urwiler and Walter Inc., Engineering and Surveying Company located in Marlborough Township.

contrary to sections 602, 812 and 825 of the Marlborough Township Zoning Ordinances. We disagree.

As these were the only ordinances mentioned at the hearings before the undersigned, appellants' later statement "including but not limited to" amounts to waiver as to any other ordinance not specifically addressed herein. As the Brewsters set forth no specifics as to how the undersigned's decision to allow blasting within 25 feet of their property line is contrary to the three ordinances set forth in their concise statement, the undersigned will address what it believes Brewsters' reference to these zoning ordinances is, where possible, commencing with Marlborough Township Zoning Ordinance section 602.C,[9] which pertains to an alleged discontinuance of a nonconforming use.

The Supreme Court in *Pappas v. Zoning Board of Adjustment of City of Philadelphia,* 527 Pa. 149, 152-53, 589 A.2d 675, 676-77 (1991) stated that the owner of property to which a lawful nonconforming use has attached "enjoys a vested property right" and reiterated the holding that "abandonment of a nonconforming use cannot be established by mere proof of a failure for a time to use the property or of a temporary use of the property not inconsistent with an intention to use it for the original purpose. There must be evidence of intention to abandon." The burden of proof of abandonment is on the party asserting it. *Pappas, supra* at 154, 589 A.2d at 676-77.

---

9. Discontinuance. A nonconforming use, when discontinued, may be resumed any time within one year from such discontinuance but not thereafter. The resumption may be of the same class or use, but shall not be of a lower (less restrictive) classification. See Marlborough Township Zoning Ordinance, section 602.C.

Abandonment is a question of fact that depends upon all the factors present in the case. *Kuhl v.* Zoning *Hearing Board of Greene Township,* 52 Pa. Commw. 249, 415 A.2d 954 (1980). Abandonment is proved only when both essential elements are established: (1) intent to abandon and (2) implementation of the intent, *i.e.,* actual abandonment. *Rayel v. Bridgeton Township Zoning Hearing Board,* 98 Pa. Commw. 455, 459, 511 A.2d 933, 935 (1986).

Here, appellants cannot establish abandonment because the substantive evidence does not show an intention of Highway Materials to abandon the nonconforming use on the 4.84 acre portion of the north side adjacent to the Brewster property. Moreover, there is ample evidence demonstrating Highway Materials' intention to quarry through the north side. (Exhibit HM 1.)

Turning next to section 812 of the zoning ordinance, titled environmental protection. When an appellant fails to identify in any fashion the underlying reason for the claimed error of the trial court, thereby requiring the latter to resort to guesswork in attempting to discern the basis of an appellant's complaints, the trial court is necessarily severely impeded in its preparation of a legal analysis and discussion pertinent to those issues. *Commonwealth v. McCandless,* 880 A.2d 1262 (Pa. Super. 2005). That is the case with this contention and it is respectfully suggested that appellants have waived this issue.

Appellants next address section 825 of the zoning ordinance, surface mining and quarrying. The undersigned presumes appellants' contention is that the 100-foot setback in paragraph D of zoning ordinance section

825 should apply to Highway Materials quarrying operation in lieu of the existing 25-foot setback.

As previously stated, there were no applicable quarry setbacks in the township zoning ordinance at the time of the *Kibblehouse* decision. The only applicable setback in place in 1992 was created by DEP, which permitted quarrying within 25 feet of the side yard. See 25 Pa. Code §77.572(b). Testimony regarding the steep slope was elicited by appellants from Mr. Breyer.

The undersigned determined that Mr. Breyer's testimony constituted conjecture. Nevertheless, the Commonwealth Court held that Kibblehouse had the right to quarry throughout the north side of the subject property. The township is bound by the *Kibblehouse* decision under the doctrine of res judicata. Hence, the 100-foot setback of section 825 is not applicable to Highway Materials' quarrying operation. The holding in *Kibblehouse* was unambiguous and was not left subject to further restriction from the township.

(1) (iii). Appellants next contend that the undersigned's decision that Highway Materials. Inc. "shall be permitted to blast within 25 feet of [appellants'] property line . . . is contrary to the . . . regulations, permits and authorizations of the Department of Environmental Protection relating to mining activities including but not limited to, the relevant buffers/setbacks relating thereto." We disagree.

As previously stated, the Commonwealth Court decision in *R.K. Kibblehouse Quarries*[10] *v. Marlborough*

---

10. Kibblehouse Quarries was the predecessor to Highway Materials Inc.

*Township Zoning Hearing Board,* 157 Pa. Commw. 630, 630 A.2d 937 (1993) affirmed a 1992 order of the Montgomery County Court of Common Pleas,[11] which established quarrying as a legal nonconforming use on the north side of the subject property. The only applicable setback in place in 1992 was created by DEP, which permitted quarrying within 25 feet of the side yard. See 25 Pa. Code §77.572(b).

The Brewsters' use of the terms "including but not limited to" fails to identify in any respect the underlying reason for the claimed error of the trial court, thereby, once again, requiring the undersigned to resort to guesswork in attempting to discern the basis of the Brewsters' complaints. The evidence submitted by Highway Materials reflects an ongoing dialogue between Highway Materials and DEP. The order of the undersigned takes into consideration the restrictions set forth by DEP in order for Highway Materials to resume blasting activities in the top level areas adjoining the Brewster property.

It is also clear from the minutes of the meeting among DEP, Maurer and Scott, and Highway Materials on April 23, 2008, that the discussion of the restrictions placed on Highway Materials was totally related to Mr. Brewster and his deliberate exposure to potential blasting hazards. Mr. Brewster said that he became unhappy with the quarry when they cut the trees and tore the berm down and subjected him to noise and dirt. Mr. Brewster testified that his grandchildren and the animals were exposed to the dangers of the blasting. When Mr. Brewster was told that the berm would be replaced and landscaped as well, he said that "My issue is not the berm for what you

---

11. *Supra.*

are doing with it. My issue is for the safety of my family and my children and grandchildren. If you want to put the berm back when you're ready to close the quarry that does nothing for me." (N.T. hearing 5/20/08, p. 56.)

The testimony from Sherman Hayes, an explosives expert, confirms the fact that the blasting can safely take place at 300 feet from the Brewster property if Mr. Brewster would refrain from standing on the property line.

(1) (iv). Appellants next contend that the undersigned's decision that Highway Materials Inc. "shall be permitted to blast within 25 feet of [appellants'] property line . . . is contrary to the . . . laws of the Commonwealth of Pennsylvania relating to the protection of, and expansion of, nonconfirming (sic) uses and (sic) properties and the regulation thereof." We disagree.

The right to expand a nonconforming use as required to maintain economic viability or to take advantage of increases in trade is constitutionally protected. *Humphreys v. Stuart Realty Corporation et al.,* 364 Pa. 616, 621, 73 A.2d 407, 409 (1950). "[A] nonconforming use cannot be limited by a zoning ordinance to the precise magnitude thereof which existed at the date of the ordinance; it may be increased in extent by natural expansion and growth of trade, neither is it essential that its exercise at the time the ordinance was enacted should have utilized the entire tract upon which the business was being conducted." *Id.* at 621, 73 A.2d at 409. See also, *Silver v. Zoning Board of Adjustment,* 435 Pa. 99, 103, 255 A.2d 506, 507-508 (1969) (invalidating as unconstitutional a zoning provision which prohibited any increase in the number of dwelling units

in an apartment building lawfully nonconforming as to use); *Chartiers Township v. William H. Martin Inc.,* 518 Pa. 181, 542 A.2d 985 (1988) (upholding the protected right of operators of a nonconforming landfill to increase the daily intake of solid waste).

The protections afforded to such uses are, in this Commonwealth, of constitutional dimension. *Hanna v. Board of Adjustment,* 408 Pa. 306, 313, 183 A.2d 539, 543 (1962). In *Hanna, supra,* the Pennsylvania Supreme Court held that the continuance of nonconforming uses is countenanced because the refusal so to do "would be of doubtful constitutionality." Given the constitutional proportions of Highway Materials' right to expand its legal nonconforming use by natural expansion and growth of trade, the undersigned fails to see how this decision could be deemed as erroneous.

(2) Appellant next contends that the trial court erred in granting injunctive relief to Highway Materials whom they contend failed to establish their burden of proof. We believe this contention is without merit.

Highway Materials have set forth their claim for injunctive relief based upon the theory of private nuisance. Injunctions lie to remedy nuisances. Restatement (Second) of Torts §822.[12] One is subject to liability for a

---

12. Private nuisance: Elements of liability

4 Restatement (Second) of Torts §822.

"One is subject to liability for a private nuisance if, but only if, his conduct is a legal cause of an invasion of another's interest in the private use and enjoyment of land, and the invasion is either

"(a) intentional and unreasonable, or

"(b) unintentional and otherwise actionable under the rules controlling liability for negligent or reckless conduct, or for abnormally dangerous conditions or activities."

private nuisance if, but only if, his conduct is the legal cause of an invasion of another's interest in the private use and enjoyment of the land and the invasion is intentional and unreasonable, or unintentional and otherwise actionable. Restatement (Second) of Torts §822. Highway Materials must demonstrate that the conduct of appellants was intentional or unreasonable, that the appellants were negligent or reckless, or that the activity was abnormally dangerous. In addition, an appellee must demonstrate that they had property rights in the land so affected, and that they suffered significant harm. *McQuilken v. A & R Development Corp.,* 576 F. Supp. 1023 (E.D. Pa. 1983). Instantly, the elements are all present.

Clearly, Highway Materials established the requirements of private nuisance. Mr. Brewster deliberately took up positions on his property line with the express intention of preventing Highway Materials from proceeding with their plans. Appellants have intentionally interfered with the lawful use of the adjoining property and with the lawful activities of the property owner. Highway Materials was permitted to mine the area adjacent to the Brewster property by the Marlborough Township Board of Supervisors, and all of its blasting plans were approved by DEP. Highway Materials is entitled to an order, which will serve to prevent the Brewsters from interfering with the lawful use of their property.

In further evaluating a private nuisance claim, the key question is whether one person impaired another person's private right of use or enjoyment of their land. The Restatement indicates that "any one of the types of conduct that serve in general as the bases for all tort liability may invade a person's private right of use or enjoyment of

their land." *Diess v. PennDOT,* 935 A.2d 895, 905 (Pa. Commw. 2007) (quoting Restatement (Second) of Torts §822).

A defendant may be liable for the invasion of such use and enjoyment when the interference is intentional and unreasonable or the result of negligent, reckless or abnormally dangerous conduct. *Id.* There could not be a clearer illustration of an individual impairing another's private right of use or enjoyment of land than the Brewsters' intentional actions. Neither is there a clearer demonstration of intentional and unreasonable interference with the quarry's legal use of its land than that of the Brewsters. While DEP can designate where Highway Materials can and cannot blast, they do not have the authority to tell the Brewsters where they can and cannot stand. That is Highway Materials' chief purpose for seeking this injunction. DEP designated this situation as extreme where Mr. Brewster deliberately exposes himself to potential blasting hazards. The risk that Mr. Brewster represents cannot be ignored.

Liability for nuisance applies only when there is significant harm,[13] which is a harm of importance involving more than a slight inconvenience or petty annoyance. Here, it is established that the quarry has the right to mine and has established the impact of not being able to mine the area adjacent to the Brewster property. Appellants' obvious intention is to stand on the property line when Highway Materials intends to blast for the sole objective

---

13. Restatement (Second) of Torts §821F. Significant harm
    *"There is liability for a nuisance only to those to whom it causes significant harm, of a kind that would be suffered by a normal person in the community or by property in normal condition and used for a normal purpose."*

of obstructing Highway Materials from blasting. The quarry loses approximately two and a half million tons of stone, which is approximately $15 million if this area is not permitted to be mined. Consequently, the quarry will suffer significant losses if they are not permitted to do what they are entitled to do under the law.

It is correct that a preliminary injunction may be granted where the defendant's actions threaten monetary loss so great as to threaten the existence of the plaintiff's business. *Three County Services Inc. v. Philadelphia Inquirer,* 337 Pa. Super. 241, 249, 486 A.2d 997, 1001 (1985). Oddly enough, the intentional interference by the Brewsters with the quarry serves only to delay the quarry from establishing the face, which precedes commencement of the reclamation project, which will restore the berm and landscape the area. It will also complete the quarry's business in this area of the quarry.

While it is clear that there is interference with the Brewsters' property on the part of the quarry, balanced against the Brewsters' intentional interference with the quarry, the quarry's interference with the Brewsters is relatively minor. Viewing the facts as supported by the record, the undersigned found that Highway Materials, under the standard for private nuisance, established their burden.

(3) Appellants next contend that the trial court erred in denying their petition for preliminary injunction as the evidence adduced at the hearing established their burden of proof entitling them to relief. We believe this contention is without merit.

The burden is on the party seeking injunctive relief to establish the essential prerequisites necessary for the grant of such relief. *Warehime v. Warehime,* 580 Pa. 201,

860 A.2d 41 (2004). These essential prerequisites require a party to show the following:

"(1) that the injunction is necessary to prevent immediate and irreparable harm that cannot be adequately compensated by damages;

"(2) that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings;

"(3) that a preliminary injunction will properly restore the parties to their status as it existed immediately prior to the alleged wrongful conduct;

"(4) that the activity it seeks to restrain is actionable, its right to relief is clear and that the wrong is manifest, or, in other words, . . . that it is likely to prevail on the merits;

"(5) that the injunction it seeks is reasonably suited to abate the offending activity; and

"(6) that a preliminary injunction will not adversely affect the public interest." *Id.* at 209-10, 860 A.2d at 46-47.

Focusing on the prerequisite that greater injury would result from refusing an injunction than from granting it, and, concomitantly, that issuance of an injunction will not substantially harm other interested parties in the proceedings (see *Sovereign Bank v. Harper,* 674 A.2d at 1085, 1093 (Pa. Super. 1996)), it is clear that if this area is not permitted to be mined, the quarry is going to go out of business. Highway Materials will suffer irreparable harm and possibly a lot sooner than otherwise.

Moreover, shutting down this operation would put 25 people out of work. (N.T. hearing 5/16/08, p. 27.) For

these reasons, the undersigned finds that appellants have failed to satisfy one of the requisite elements for the grant of a preliminary injunction, thereby necessitating the denial of their petition. Hence, we need not address appellants' arguments concerning any of the remaining requisite elements.

(4) Appellants' final issue is that the trial court erred in not granting appellants' request for attorney's fees.

Simply put, appellants' request for attorney's fees is unsupported by the record.

Appellants also state in their Pa.R.A.P. 1925(b) concise statement that they "seek leave to file a supplemental statement to clarify their position in response to the court's more specific Rule 1925(a) opinion as they cannot readily discern the basis for this honorable court's decision given the general and non-specific nature of the order which does not delineate the specific grounds on which the relief is granted or denied."

Generally, this type of request to submit a supplemental statement is utilized when the trial court enters an order simply granting or denying the requested relief and no other information. That is not the case instantly, and the undersigned respectfully recommends that this request to supplement its 1925(b) concise statement be denied.

## V. CONCLUSION

Based upon the foregoing, the undersigned respectfully requests that its order of May 23, 2008 be affirmed.